[Civ. No. 56317. Second Dist., Div. Two. Nov. 14, 1979.]

CITY OF LOS ANGELES et al., Plaintiffs and Respondents, v.
AL SILVER et al., Defendants and Appellants.

COUNSEL

Jonathan K. Golden for Defendants and Appellants.

Burt Pines, City Attorney, William B. Burge, Assistant City Attorney, and Claudia McGee Henry, Deputy City Attorney, for Plaintiffs and Respondents.

OPINION

**ROTH, P. J.**—In July of 1977, appellant began operation of an amusement center known as "Rock City" located at 7001 Hollywood Boulevard in the City of Los Angeles, part of an area designated for zoning purposes as "C4." At its inception, the center's business inventory consisted of some 28 coin-operated game machines of the pinball or

electronic variety. Within days of its opening, the Los Angeles Department of Building and Safety issued its order to discontinue the venture's operation because it was in contravention of Los Angeles Municipal Code (L.A.M.C.) section 12.16.[1] When the order was not complied with, a criminal complaint was filed against appellants on September 14, 1977, for violation of the section, and on May 25, 1978, they were found guilty of the charge. By this time more than 60 machines of the type described had been installed and that number increased to some 118 operating on a 24-hour day, 7 days a week, basis by July 13 the same year, when respondent city filed its complaint below for an injunction against continued code violation.[2] On September 12, 1978, a preliminary injunction was issued by the trial court which provided: "IT IS ORDERED that during the pendency of this action or until further order of the Court, defendants Al Silver and Kathryn Silver, their agents, officers, employees, and representatives, and all persons acting in concert with or participating with them are hereby enjoined from engaging in, or performing any and all of the following: a) Maintaining the amusement enterprise known as "Rock City," located at 7001-03 Hollywood Boulevard (hereafter called premises) in the City of Los Angeles, in violation of any provisions of law. b) Using the premises for the maintenance and operation of a penny arcade, to wit an amusement center where coin operated devices for entertainment are made available to members of the public; c) Using the premises for the maintenance and operation of games of skill and science including any games where consideration is paid by a player for the right to play or participate in a game; pinball machines; football game machines; electronic games; and any other coin operated amusement games; and d) Using the premises in violation of the provisions of Section 12.16 of the Los Angeles Municipal Code."

---

[1]"SEC. 12.16. 'C4' COMMERCIAL ZONE: The following regulations shall apply in the 'C4' Commercial Zone:

"A. USE—No building, structure or land shall be used and no building or structure shall be erected, structurally altered, enlarged, or maintained, except for the following uses, and when a "Supplemental Use District" is created by the provisions of Article 3 of this Chapter, for such uses as may be permitted therein:

" . . . . . . . . . . . . .

"2. Any use permitted in the 'C2' Zone except: (a) The following amusement enterprises:...(1) boxing arena; (2) games of skill and science; (3) merry-go-round, ferris wheel or carousel; (4) penny arcade; (5) shooting gallery; (6) skating rink; (7) taxi dance hall; (8) strip tease show; (9) billiard or pool hall; (10) bowling alley; and other similar uses."

[2]In the face of the Department of Building and Safety's order and of the criminal complaint, appellant entered into a renewal of his lease agreement covering the business premises for an additional four-year term at a total rental of $240,180, for the express purpose of conducting thereon "an arcade and for no other purpose."

After the injunction likewise was ignored, appellant Al Silver was adjudged guilty of contempt at a hearing held for that purpose on November 7, 8 and 9, 1978, and he was sentenced to 45 days in jail, with the proviso that if after serving 5 days he agreed to cause cessation of the activity described in the injunction the remainder of the sentence would be suspended. When that agreement failed to be entered upon and the business continued as before, the trial court on December 22 the same year, following notice and hearing, issued its order restating the provisions of the preliminary injunction and further directing the Los Angeles Police Department to remove "all coin operated devices for entertainment which are made available on the [business] premises to members of the public." That directive was executed and the items referred to were seized.

Both the order granting the initial preliminary injunction and that which revised it in the fashion described are the subjects of this appeal.

For the purposes of our disposition herein, the issues are:

1. Whether the coin-operated game machines at Rock City are games of "skill and science" within the meaning of L.A.M.C. section 12.16.

2. Whether Rock City is a "penny arcade" under the same section.

3. Whether the order directing removal of the machines was properly granted.

■ ■ Respondents advance pertinent legal propositions reiterated by *Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 460, [202 P.2d 38, 7 A.L.R.2d 990], which are not controverted by appellants, namely, that: "It is well settled that a municipality may divide land into districts and prescribe regulations governing the uses permitted therein, and that zoning ordinances, when reasonable in object and not arbitrary in operation, constitute a justifiable exercise of police power. (*Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 337 [175 P.2d 542]; *Acker* v. *Baldwin,* 18 Cal.2d 341, 344 [115 P.2d 455]; see *Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213, 215 [93 P.2d 93].) In enacting zoning ordinances, the municipality performs a legislative function, and every intendment is in favor of the validity of such ordinances. (*Jardine* v. *City of Pasadena,* 199 Cal. 64, 72-73 [248 P. 225, 48 A.L.R. 509].) It is presumed that the enactment as a whole is justified under the police power and adapted to promote the public health, safety, morals, and

general welfare. (See *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 338 [175 P.2d 542].)"

■ It is likewise pointed out that municipal regulation through zoning specifying permissible locations of entertainment and amusement enterprises has long been recognized judicially. (*Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64 [101 Cal.Rptr. 768, 496 P.2d 840], app. dism. (1973) 409 U.S. 1121 [35 L.Ed.2d 254, 93 S.Ct. 940] [skating rinks]; *Carolina Lanes, Inc.* v. *City of Los Angeles* (1967) 253 Cal.App.2d 831 [61 Cal.Rptr. 630] [strip tease]; *Francis* v. *County of Stanislaus* (1967) 249 Cal.App.2d 862 [57 Cal.Rptr. 881] [commercial card rooms]; *In re Lawrence* (1942) 55 Cal.App.2d 491 [131 P.2d 27] [pinball machines].)

■ Finally, it is noted it is within a legitimate province of a city to legislatively declare violation of its zoning ordinances to be a public nuisance subject to abatement by injunction (see *City and County of San Francisco* v. *Padilla* (1972) 23 Cal.App.3d 388 [100 Cal.Rptr. 223]) and that the City of Los Angeles has done so. (L.A.M.C. § 11.00(m).)

Based upon the foregoing respondents maintain the trial court was justified in deciding the injunctions herein should issue. There is no doubt that contention is well taken, provided only that the Rock City enterprise is such as to fall within the excepted activities enumerated in L.A.M.C. section 12.16. (See fn. 1.)

Appellants urge that is not the case. They maintain, first, their coin-operated machines are not, under the city's own definition, "games of skill and science." Thus they point out L.A.M.C. section 103.116 defines such a game to be: "(a) Definitions. As used in this Article: 1. 'GAME OF SKILL AND SCIENCE' means any game of amusement, but not including athletic sporting events, which is participated in by one or more players *for any prize, gift or award of anything of value* where or when any charge is made by the person conducting, operating or maintaining such game, or any consideration is paid by any player for the right to play or participate in any such game, and the dominating factor in determining the result of such game is dependent upon the skill of the player or players and not upon chance; provided, that in any case where the result of such game may be dependent to some extent upon the judgment, intelligence or adroitness of the player, but nevertheless the dominating factor in determining the result of such game is chance,

such a game shall not be considered as a game of skill and science, but shall be considered as a game of chance." (Italics added.)

Similarly, appellants maintain they were not operating a "penny arcade" as that term must be understood for the purpose, and that they may not constitutionally be found in violation of section 12.16 under its "other similar uses" phraseology.

In our view, whatever are the merits of appellants' arguments respecting the first and last of these contentions,[3] it cannot fairly be said the designation "penny arcade," though not otherwise defined, is such as to fail to embrace within its meaning those activities engaged in at Rock City or to be constitutionally offensive as either vague or ambiguous. As in other instances where it has been necessary to test against a constitutional scale the import of language admittedly subject to dispute regarding definition, (see e.g., *Rose* v. *Locke* (1975) 423 U.S. 48 [46 L.Ed.2d 185, 96 S.Ct. 243]; *County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662 [114 Cal.Rptr. 345, 522 P.2d 1345]; *In re J.T.* (1974) 40 Cal.App.3d 633 [115 Cal.Rptr. 553]), what is required is only that interpretation proceed in accordance with what would commonly be understood by the language employed. (See *People Younger* v. *Superior Court* (1976) 16 Cal.3d 30 [127 Cal.Rptr. 122, 544 P.2d 1322].) Here the trial court concluded that by the term "penny arcade" as used in the ordinance in question what was meant was "an amusement center where coin operated devices for entertainment are made available to members of the public." That interpretation accords not only with ordinary understanding of the language but as well with the administrative construction of the term expressed in an opinion promulgated by the Los Angeles City Attorney in 1974.[4] We are persuaded the meaning arrived at was correctly determined.

---

[3]We note in passing that the definition of "Game of Skill and Science" set out above is limited to the article in which it appears; that that article does not contain section 12.16; and that section 103.116 is concerned essentially with whether or not a police permit is required by the operator of the game. For a similar but less restrictive understanding of what constitutes a game of skill, see *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726 at page 732 [114 Cal.Rptr. 460, 523 P.2d 260].

[4]"Section 12.16A2(a)(4) of the Los Angeles Municipal Code does not permit a 'penny arcade' enterprise in a C-4 commercial zone.

"While 'penny arcade' is not defined for zoning purposes in the Municipal Code, Webster's Third New International Dictionary states that a 'penny arcade' is an amusement center where each device for entertainment may be operated for a penny. The fact that a penny may not be used today to operate these devices has no effect on the basic definition. We would interpret a 'penny arcade,' for zoning purposes, to mean

We are likewise of the view there was no error respecting the trial court's action in ordering seizure of the proscribed devices in order to enforce its otherwise valid directives in the face of what clearly amounted to a persistent, obstinate and unlawful refusal by appellants to abide by them. ▪ "Every court has power to compel obedience to its judgments and orders (Code Civ. Proc., §§ 128, subd. 4, 177), and a court of equity retains inherent jurisdiction to oversee and enforce execution of its decrees. ([4] Witkin, Cal. Procedure (2d ed. 1970) Judgments, § 79, p. 3240; see, e.g., *Lesser & Son* v. *Seymour.* 35 Cal.2d 494, 500...; *Green Trees Enterprises* v. *Palm Springs Alpine Estates,* 66 Cal.2d 782, 788...*Vallelunga* v. *Gomes,* 102 Cal.App.2d 374, 382...." ▪ ▪▪▪ (*Brown* v. *Brown* (1971) 22 Cal.App.3d 82, 84 [99 Cal.Rptr. 311].)[5]

The orders appealed from are affirmed.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied December 14, 1979, and appellants' petition for a hearing by the Supreme Court was denied January 8, 1980.

---

a place of business devoted primarily or in some substantial degree to maintaining coin-operated amusement machines and devices for the purpose of providing public entertainment."

[5]Appellants' further contention the trial court's order of police enforcement constituted a mandatory injunction which should have been stayed pending appeal is also without merit, since the directive was no more than in aid of the preliminary injunction and was not an order directing appellants to do anything. (See *Kettenhofen* v. *Superior Court* (1961) 55 Cal.2d 189 [10 Cal.Rptr. 356, 358 P.2d 684].)