Filed 5/30/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Estate of RUDY BONZI, Deceased. | F065067 |
| _____ | |
| | (Super. Ct. No. 33869) |
| JAMES BONZI, as Executor, etc., et al., | |
| Petitioners and Appellants, | |
| v. | **OPINION** |
| THE PEOPLE ex rel. CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, CENTRAL VALLEY REGION, et al., | |
| Objectors and Respondents. | |

APPEAL from an order of the Superior Court of Stanislaus County. Hurl W. Johnson, Judge.

Thomas J. O'Keefe and Everett L. Skillman for Petitioners and Appellants.

Kamala D. Harris, Attorney General, and Randy L. Barrow, Deputy Attorney General, for Objectors and Respondents.

-ooOoo-

James Bonzi, executor of the estate of Rudy Bonzi, filed a petition for an order confirming the sale of real property that was part of the estate, which has been in probate since Rudy Bonzi's death in 1991. The People of the State of California ex rel. California Regional Water Quality Control Board, Central Valley Region (RWB), and ex

rel. California Department of Resources Recycling and Recovery (CalRecycle) (collectively respondents), filed an objection to that petition. Respondents contended the net proceeds of the sale of the property were subject to a stipulated court order that required real property jointly owned by Rudy and Mary Bonzi be sold to satisfy the Bonzis' statutory obligation to remediate and close a solid waste landfill they owned and operated. The trial court agreed with respondents and found the sale proceeds subject to payment under that court order.

James Bonzi, as executor for the estate of Rudy Bonzi, and Thad Bettencourt, as executor of the estate of Mary Bonzi and trustee of the 2007 Mary Bonzi Novation General Trust (collectively appellants), appeal, contending (1) respondents did not have standing to enforce the stipulated court order, (2) respondents are barred from enforcing the order because they failed to file a creditor's claim as required by Probate Code section 9100,[1] and (3) there is insufficient evidence to support the trial court's finding of estoppel. Finding no merit in appellants' assertions of error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Rudy and Mary Bonzi were married in 1940.[2] Beginning in 1967, they jointly owned and operated a 128-acre licensed solid waste disposal facility, the Bonzi Sanitation Landfill, in Modesto (the Bonzi Landfill). The Bonzi Landfill was operated by Bonzi Sanitation Landfill, a general partnership (Bonzi Sanitation), on property owned by Ma-Ru Holding Company, Inc., a California corporation (Ma-Ru). Rudy and Mary were the sole shareholders of Ma-Ru and the sole partners of Bonzi Sanitation.

The Bonzi Landfill is subject to regulation by the RWB, a state agency that is (1) authorized and responsible for ensuring the prevention and abatement of water

---

[1] Subsequent statutory references are to the Probate Code unless otherwise noted.

[2] We will refer to the various members of the Bonzi family by their first names, not out of disrespect, but to avoid any confusion to the reader.

pollution and nuisance within the Central Valley Region, including Stanislaus County, and (2) authorized to issue orders and request the filing of civil actions to carry out this responsibility. (Wat. Code, §§ 175, 13200, 13201, 13225, 13240 et seq., 13300 et seq.) As early as 1984, groundwater pollution was discovered at the Bonzi Landfill; the RWB began issuing a series of administrative orders which required the evaluation and remediation of the contamination, including Cease and Desist Order No. 84-153, Cleanup and Abatement Order No. 89-185, and Waste Discharge Requirements Order No. 98-093. The Bonzi Landfill was also subject to regulation by CalRecycle and its predecessor, the California Integrated Waste Management Board (CIWMB). CalRecycle is a state agency that administers programs formerly managed by CIWMB, including regulatory oversight of solid waste landfills. (Pub. Resources Code, § 40000 et seq.)

All landfills in California, including the Bonzi Landfill, are under state mandate to create and fund plans for their ultimate closure and post-closure maintenance. (Pub. Resources Code, §§ 43500, 43501, subd. (a).) To ensure funds will be available to perform these activities and pay for corrective actions, a landfill owner or operator is required to establish a trust fund, or an equivalent financial arrangement acceptable to CalRecycle, commonly referred to as "financial assurances." (Pub. Resources Code, § 43501, subd. (a)(1)(B); Cal. Code Regs., tit. 27, § 22225, subd. (a)(2).) The Legislature imposed the financial assurances requirement to achieve "the long-term protection of air, water, and land from pollution due to the disposal of solid waste." (Pub. Resources Code, § 43500.) In accordance with the statutory financial assurance requirements, Rudy and Mary established and began funding a landfill trust account for the Bonzi Landfill (the Landfill Trust). As of 1990, the Landfill Trust was being held by Union Safe Deposit Bank, Stockton, California, as Trustee.

The minimum fund balance is calculated and increased annually; the fund must be fully funded by the time the disposal facility receives its last shipment of waste. (Cal. Code Regs., tit. 27, § 22225, subd. (a).) CalRecycle may obtain injunctive relief to

3.

compel the owner or operator to provide the required financial assurances. (Pub. Resources Code, § 45014, subd. (b).) The operator may request CalRecycle release disbursements from the trust fund to pay for closure, postclosure maintenance, or corrective action activities, in advance of those activities or as reimbursement for activities completed. (Cal. Code Regs., tit. 27, § 22234, subd. (a).) The RWB is authorized to use financial assurance funds if the owner or operator has failed to implement the required closure, post-closure, or corrective activities. (Pub. Resources Code, § 43601, subd. (c); Cal. Code Regs., tit. 27, § 22234, subds. (c) & (d).) If the trust fund has excess funds, the operator may request the excess be returned to it. (Cal. Code Regs., tit. 27, § 22240, subd. (c).)

*The Dissolution Action*

In 1986, Mary filed a petition to dissolve her marriage to Rudy in Stanislaus County Superior Court, case number 212118, which was later renumbered to 83455 (the Dissolution Action). A major concern of both parties in the Dissolution Action was their joint obligation to fund the cleanup and closure of the Bonzi Landfill. To address this issue, Rudy proposed selling their jointly owned real property to fund the Landfill Trust. At that time, estimated closure and post-closure costs that needed to be funded totaled approximately $7.6 million; the Landfill Trust's reserve, however, was only $220,000. Mary opposed this plan, asserting that the law did not require the total amount of the closure and post-closure costs be deposited in full, and the funding of these costs should be treated as any other community obligation.

In November 1991, an order was filed in the Dissolution Action entitled "Final Tentative Decision" (the 1991 Order). The 1991 Order incorporated stipulations between the Bonzis that had been entered into the clerk's minutes during the dissolution trial. Among other things, the Bonzis stipulated that they would each have a 50 percent ownership interest in the Bonzi businesses, including the Bonzi Landfill, and an exhibit attached to the 1991 Order would state how the parties would be required to assure there

4.

would be funds available to satisfy the remediation and closure costs. The Bonzis acknowledged in the 1991 Order that "[g]overnmental regulations have placed husband and wife in the position of having to fund approximately $8,000,000 in the ensuing years to remediate ground water contamination and to close the dump. As conceded by both parties, this as a practical matter requires them to continue with joint ownership of those businesses, long past their matrimonial separation. This has further led both parties to further stipulate that they will remain joint owners of the remainder of their businesses."

The exhibit attached to the 1991 Order, labeled Exhibit A, is entitled "Proposed Order Re: Groundwater Remediation, Closure, & Post-Closure of the Bonzi San[i]tation Landfill" (the Proposed Remediation Order). The Proposed Remediation Order provides that: (1) the Bonzis, including their agents and representatives, "shall comply with any mandates/directives of the appropriate county, state, and federal governmental agencies pertaining to the groundwater remediation, closure, and post-closure" of the Bonzi Landfill; (2) obligations relating to groundwater remediation, closure and post-closure are community in nature; (3) the Bonzis are to fund these obligations first from revenues from their jointly-owned waste disposal business and, if those funds are insufficient, they are to take the steps necessary to encumber or sell real property they own together as tenants in common; (4) to ensure there are sufficient assets to fund these obligations, the Bonzis may not sell or transfer any of their interests in jointly owned real property or the waste disposal business without court approval; (5) the court retained jurisdiction over the subject matter to ensure compliance or make additional orders; and (6) the Bonzis shall record the Proposed Remediation Order with the county recorders in San Joaquin, Stanislaus, Merced and Tuolumne Counties, in order to lien their jointly owned real property interests.

When the 1991 Order was entered, the jointly owned real property subject to the order included property at 2066 Morgan Road, Ceres, California (Morgan Property) and 2960 Farrar Avenue, Modesto, California (Farrar Property).

5.

*The Administration of Rudy's Estate*

Rudy died on December 16, 1991, one month after marrying Lynda Clark Bonzi. The following day, a petition to administer Rudy's will was filed in Stanislaus County Superior Court; letters of administration were issued on December 18, 1991.  In 1996, the court appointed Rudy's son, James Bonzi, as a co-executor of Rudy's estate; James was appointed the sole executor in December 2008.  Rudy's estate remains under the administration of the probate division of the Stanislaus County Superior Court in case number 33869 (the Probate Case).[3]

Rudy's estate continued to fund the Landfill Trust.  For example, in February 1994, the co-executor of Rudy's estate stated in a letter to the financial assurance section of the CIWMB that he was sending additional money for the Landfill Trust and that the court had cleared the way for funding the "needed expenses" for the "Landfill Closure Account."

*The 1997 Remediation Order*

In August 1997, James and his co-executor filed their attorney's declaration in the Dissolution Action.  The attorney, Kenneth Mello, stated he did not believe the 1991 Order had been entered as a judgment, and the Proposed Remediation Order attached to

---

[3] Three separate appeals, filed by Lynda and relating to the administration of Rudy's estate, have been before this court.  In *Estate of Bonzi* (Feb. 22, 1995, F021243) [nonpub. opn.], we reversed an order denying Lynda's petition in which she sought a statutory share of Rudy's estate as an omitted spouse; we found that Lynda was an omitted spouse and her petition was not a will contest.  In *Estate of Bonzi* (Apr. 17, 2001, F035282) [nonpub. opn.], we concluded that Lynda was not entitled to both a statutory share of Rudy's estate and property interests devised to her under a will executed before the marriage; instead, Lynda was required to elect to receive distribution either under the will or under the omitted spouse statute.  Finally, in *Estate of Bonzi* (Aug. 25, 2003, F041145) [nonpub. opn.], we dismissed Lynda's appeal, in which she attempted to challenge the trial court's decision that Lynda's election to receive her distribution as an omitted spouse revoked the remainder interest originally devised to Lynda's daughters, as Lynda lacked standing to appeal.

6.

the 1991 Order was not recorded in the counties listed therein. Mello asked the court to sign the Proposed Remediation Order so it could be recorded.

In response, on August 19, 1997, the court issued an "Order Re: Groundwater Remediation, Closure, and Post Closure of the Bonzi Sanitation Landfill" (the Remediation Order), which contains the exact same provisions as the Proposed Remediation Order. The court entered the Remediation Order nunc pro tunc as of November 15, 1991. The Remediation Order was recorded with the Stanislaus County Recorder that month.[4]

After this, Mello acknowledged in a letter to an escrow officer that both Mary and Rudy's estate were obligated to fund the financial assurance requirements under the Remediation Order, and half of the proceeds from the recent sale of property was subject to the Remediation Order and should be paid to the Bonzi Landfill business for funding the Landfill Trust.

*The 2004 Disputes Regarding Funding of the Landfill Trust*

In 2004, a dispute arose over the funding of the Landfill Trust. In a January 2004 letter, Mary's attorney asked Mary's sons, James and Steve Bonzi, for an accounting of property that Mary jointly owned with Rudy's estate, which had been sold, the proceeds of which she understood had been deposited into the Landfill Trust. Mary's attorney stated that Mary was requesting exact dollar amounts of her share of these properties and Mary intended to "cooperate with any sale of assets in order to fund the landfill cleanup recovery."

In February 2004, James filed a petition in the Probate Case, in which he asked that proceeds from the sale of properties owned by Mary and Rudy's estate be paid into

---

[4] In 1999, again at James's request, the court in the Dissolution Action entered an order, nunc pro tunc as of November 15, 1991, clarifying that the Bonzis' jointly owned real property was held by them as tenants in common.

the Landfill Trust to offset the deficiency in that account and to comply with CIWMB requirements. James also asked the court to order the parties to comply with the Remediation Order. In addition, James filed an amendment to a petition for an order confirming the sale of real property, in which he requested that the sellers abide by the terms of the Remediation Order, "thereby ensuring that the proceeds of the sale due to the sellers herein be made payable to the Bonzi Sanitation Landfill Closure Account."

In June 2004, James stated in his supporting declaration that (1) he believed it was clear from the Remediation Order that the court intended both parties to provide funds and security for the landfill cleanup, (2) in conformity with that order, the court previously had ordered the proceeds from the sales of the interest of Rudy's estate in jointly held properties be held in a blocked account pending determination of whether the proceeds should be applied to the clean-up, and (3) because Mary's property interests were subject to the same order, he asked for an order directing Mary to deposit the proceeds of the sale of two properties, and of any future sales of jointly held properties, into a blocked account. In a June 9, 2004 minute order, the court in the Probate Case ordered the estate's interest in sale proceeds be placed in a blocked account, and set a hearing on James's requests.

In a July 2004 response to the petition, Mary's attorney stated that Mary would not oppose the sale if $50,000 of her portion of the sales proceeds was deposited into her checking account, with the remainder deposited into the Landfill Trust.

Mary's attorney explained in a declaration filed in September 2004 that the dispute came before the court due to Rudy's estate's alleged need to sell jointly owned real property in order to adequately fund the Landfill Trust; pursuant to the Remediation Order, Mary and Rudy were to fund the obligations of the Landfill Trust first from revenues of the jointly-owned waste disposal business and then from the sale or encumbrance of jointly-owned real property; James and Steve Bonzi had asserted the revenues from the Bonzi businesses were insufficient to fund the Landfill Trust; and the

8.

issue for trial was whether the business's revenues were sufficient and whether Mary had been credited properly for her contributions to the Landfill Trust. The attorney further stated that while Mary agreed it was necessary for the parties to take immediate action to assure that the CIWMB did not cancel the Bonzi Landfill's permit because of the failure to resolve financial assurance issues, she disagreed that the only way to accomplish that was to hold all funds in the blocked account and place the funds from future real property sales into that account. Instead, Mary was willing to immediately fund her 50 percent share of the current deficiency in the Landfill Trust; if Rudy's estate was willing to do the same, there would be no risk that the CIWMB would cancel the permit. Mary was willing to fund her half of the deficiency from her share of the proceeds from the sale of jointly owned properties.

In an October 2004 order filed in the Dissolution Action, the court stated it found Mary agreed to pay her share of the proceeds for the sale of one property to the Landfill Trust, except for $50,000. Consequently, the court ordered that Mary be paid $50,000 and the balance of her share of the sales proceeds be paid to the Landfill Trust in partial satisfaction of her share of the obligation to CIWMB for the landfill closure.

*The 2005 Transfer of Funds from a Blocked Account to the Landfill Trust*

In January 2005, James petitioned in the Probate Case to transfer funds from the blocked account to the Landfill Trust. James asserted that the time for filing claims had expired and all claims filed against Rudy's estate had been paid, and that both Mary and Rudy's estate were obligated to the CIWMB pertaining to the closure and post-closure of the Bonzi Landfill, which had a deficiency of nearly $643,451. James requested that funds in the blocked account from the sale of jointly owned real properties be released in order to bring current Rudy's estate's share of the Landfill Trust, and Mary be ordered to pay half of the remaining deficiency.

Mary joined in this petition; she agreed to contribute her half of the deficiency after money from the blocked account was transferred to pay Rudy's estate's share of the

9.

deficiency. Mary noted that "the closure account is mandated by the California Integrated Waste Management Board. While the account is not a payment to the Board, and in fact the Board does not have an interest in or claim to this money, it must be maintained in the account. Should the deficiencies in the account not be rectified, the Board can, and likely will, begin proceedings against the Bonzi Sanitation Landfill."

On March 4, 2005, the court approved the distribution to the Landfill Trust of Mary's interest in funds received from the sale of property she had owned with Rudy, which was being held in a blocked account, to be credited toward Mary's share of the obligation to the CIWMB for the landfill closure.

*The 2005 RWB Order*

In April 2005, the RWB issued Cease and Desist Order No. R5-2005-0073, which found Ma-Ru and Bonzi Sanitation had discharged waste at the Bonzi Landfill contrary to requirements. The Order required Ma-Ru and Bonzi Sanitation to address operational issues that contributed to the discharge, as well as to update the financial assurances. Ma-Ru and Bonzi Sanitation were ordered to (1) submit an annual review of the financial assurance for closure and post-closure maintenance each year on April 30, and (2) ensure that the financial assurance provide that the funds for closure and post-closure maintenance name the RWB as beneficiary and be available to the RWB upon the issuance of any order under California Water Code, Division 7, Chapter 5.

*The 2005 Dispute Over the Estate's Obligation to Fund the Landfill Trust*

In 2005, a dispute arose in the Probate Case regarding the estate's obligation to fund the Landfill Trust. As explained in a May 2005 motion in limine Mary filed in that case, Lynda was challenging the validity and enforceability of the Remediation Order. Lynda claimed the Remediation Order was invalid in part because Rudy's estate was not formally substituted in place of Rudy as a party to the Dissolution Action. Mary asked the court to decide the "purely legal question" of whether the Remediation Order is "a valid, enforceable order of the court, binding on the parties." Mary asserted that Lynda

10.

was attempting to have Rudy's estate declared free of the obligation to fund the Landfill Trust. Mary objected to this since, if Lynda succeeded, Mary would likely have to fund the entire Landfill Trust herself. Mary contended the Remediation Order was enforceable against Rudy's estate, even though the estate was not a named party to it, as for many years the parties, including the court, acted as though the estate had been made a party, and the parties to the Dissolution Action, as well as the court, all treated the representative of Rudy's estate as a party in place of Rudy for years after his death. Mary also admitted that she and Rudy had agreed to continue joint ownership of the Bonzi businesses and properties long after the dissolution of the marriage "[i]n light of the large obligation to fund" the Landfill Trust.

In her May 2005 trial brief, Mary also argued that Rudy's estate was not relieved of its obligation to fund the Landfill Trust due to CIWMB's failure to file a creditor's claim. Mary asserted a creditor's claim was not required to be filed as (1) the requirement to fund the Landfill Trust was not a "claim" against the estate, and (2) neither the State nor the CIWMB was a creditor. Mary alternatively argued that even if the obligation to fund the Landfill Trust were a claim, Lynda was estopped from complaining that a claim had not been filed by failing to object earlier.

Mary subsequently filed a motion in the Probate Case to compel distribution of funds from the blocked account. In a declaration filed in support of that motion, a member of CIWMB's financial assurances section, who was monitoring the Bonzi Landfill, declared that: (1) the Bonzi Landfill had chosen to provide two trust accounts, both of which were monitored to determine compliance with the financial assurance demonstration requirements mandated by California statute for closure and post-closure maintenance cost demonstrations; (2) the balance in the two landfill closure trust accounts was greater than the required minimum balance; and (3) no additional funds needed to be deposited into the account before the next installment was due on the following anniversary, May 1, 2006.

11.

In September 2005, the probate court approved a settlement agreement between Lynda, James as executor of Rudy's estate, Mary, and other Bonzi relatives, that authorized the distribution of money from a blocked account to various heirs and beneficiaries, and the transfer of real property to Lynda. The court's order authorized the immediate reimbursement of money to Mary that had been held in the blocked account, as the money was no longer required to satisfy a deficiency in the Landfill Trust. The payment to Mary was intended to equalize payments Mary previously made to the Landfill Trust.

*The 2005 Enforcement Action*

In 2005, the People of the State of California filed suit against Ma-Ru and Bonzi Sanitation in Stanislaus County Superior Court case number 376882, to enforce compliance with the RWB orders. The parties subsequently entered into a stipulated judgment, which was filed on December 23, 2005. Pursuant to the stipulated judgment, Ma-Ru and Bonzi Sanitation were required to provide a mechanism and funding source, or prove that they already existed, for the cost of corrective action, and closure and post-closure maintenance of the Bonzi Landfill.

*The 2006 Administrative Order and Property Sale*

By April 2006, Ma-Ru and the Bonzi Sanitation were working cooperatively with the RWB. In August 2006, however, the RWB issued Cleanup and Abatement Order No. R5-2006-0721, after finding continued groundwater pollution at the Bonzi Landfill. Ma-Ru and Bonzi Sanitation were ordered to investigate the discharges of waste and clean up, and abate the effects of the waste. They were also ordered to have all financial assurance funds fully funded and accepted by CIWMB by October 15, 2011.

In November 2006, James petitioned in the Probate Case for an order confirming the sale of two jointly owned properties. The properties were being sold, in part, to put additional money into the Landfill Trust before the close of 2006, as the State was

12.

requiring $1.9 million be paid into the Trust.  The terms of the sales specifically cited the Remediation Order as authority for the sales.

*The Mary Bonzi Trust*

In January 2007, the attorney for Ma-Ru and Bonzi Sanitation, Karna E. Harrigfeld, provided Mary's attorney with a breakdown of funds required to satisfy the Bonzi Landfill's outstanding obligations from 2006, the outstanding financial assurances and fines obligations for 2007, and the 2007 environmental compliance expenses. Harrigfeld stated she understood Ma-Ru and Bonzi Sanitation assets purportedly had been transferred to the 2006 Mary A. Bonzi Revocable Trust.  Harrigfeld warned that the transfers were not valid, citing the requirement in the Remediation Order of court approval before the sale or transfer of any interest in jointly owned properties.

In 1993, Mary created a revocable living trust which was later renamed the Mary Bonzi 2007 Novation General Trust (Mary Bonzi Trust).  On August 17, 2007, Mary transferred her interest in the Farrar Property and numerous other properties she jointly owned with Rudy's estate, to the trustee of the Mary Bonzi Trust, her daughter, Mi Liza Bonzi.

*The 2007 Administrative Order*

In October 2007, the RWB issued Waste Discharge Requirements Order No. R5-2007-0148.  It was noted in the Order that according to a preliminary closure and post-closure maintenance plan for the Bonzi Landfill submitted by Ma-Ru and Bonzi Sanitation, the estimated lump sum cost of (1) carrying out all actions related to the closure was $4,753,000; (2) post-closure maintenance was $3,755,599; and (3) corrective action for all known or reasonably foreseeable releases was $1,615,581.  The Order required Ma-Ru and Bonzi Sanitation to maintain financial assurance with the CIWMB in at least the amount of the cost estimate.

The Order further stated that Ma-Ru and Bonzi Sanitation (1) must immediately obtain and maintain assurances of financial responsibility for initiating and completing

13.

corrective action, and for closure and post-closure maintenance costs, in the amount of the approved cost estimates, and submit a proposed financial assurance mechanism to the financial assurances section of the CIWMB; and (2) update the preliminary closure and post-closure maintenance plan (PCPCMP) any time there is a change that will increase the amount of the estimate, and submit the updated PCPCMP to the RWB and CIWMB. Monitoring and Reporting Program No. R5-2007-0148, issued in conjunction with the 2007 Waste Discharge Requirements Order, listed the monitoring reports required by the 2007 Order.

*Mary's Probate Case and Continued Funding of the Landfill Trust*

Mary died on June 5, 2008. A petition to administer her estate was filed on September 25, 2008 in Stanislaus County Superior Court case number 429809 (Mary Probate Case), and Mi Liza was appointed the executor. Mi Liza died in September 2009; her son, Thad Bettencourt, became the successor executor of the estate and successor trustee of the Mary Bonzi Trust.

In a November 2008 verified report of the status of the administration of Rudy's estate, James stated the estate was not in a condition to be closed because he was "charged with the responsibility of the clean-up of the [Bonzi Landfill] regarding the environmental program required by the [RWB], which includes an evaluation of the water quality in nearby domestic wells, a cleanup of the polluted groundwater and to prevent the groundwater from inundating landfill waste."

In October 2008, the estates of Rudy and Mary sold one of their companies, a recycling business, to generate sufficient cash to pay the Bonzi Landfill's consultants and fund the ongoing environmental compliance requirements of the RWB. In a November 21, 2008 letter from Harrigfeld to an attorney with the Office of Enforcement of the State Water Resources Control Board, Harrigfeld thanked the attorney and the RWB's staff for meeting with representatives of the Bonzi Landfill and Mary's estate regarding environmental compliance issues. Harrigfeld acknowledged the Bonzi

14.

Landfill's obligation to comply with CIWMB's regulatory requirements that necessitate funding the closure/post closure fund and corrective action fund; that the total estimated financial assurance obligation exceeded $10 million; and that the Landfill Trust balance was a little over $4 million, which left an outstanding obligation of approximately $6 million. Harrigfeld proposed the sale of the Morgan Property and another jointly owned property to make up the shortfall.

In February 2010, Thad Bettencourt, as trustee of Mary's trust, sold Mary's interest in the Morgan Property to the purchaser of the recycling business. By May 2010, the Bonzi Landfill had ceased accepting waste and no longer was generating revenues.

*The Enforcement Action*

In July 2009, at the request of the RWB, the People of the State of California filed suit against Ma-Ru, Bonzi Sanitation, and the estates of Rudy and Mary, to enforce the terms of the administrative clean up and abatement orders, and the 2005 stipulated judgment, in Stanislaus County Superior Court case number 643740 (Enforcement Action). The Enforcement Action is assigned to the Honorable William A. Mayhew for all purposes. The Enforcement Action seeks to compel the defendants to fund their financial assurances, supply missing reports and evaluations, clean up and abate their pollution, and comply with the terms of the 2005 Stipulated Judgment.

In April 2011, CalRecycle intervened in the Enforcement Action to enforce its statutory interest in seeing that defendants fully fund the required financial assurances and implement the closure and post-closure maintenance of the Bonzi Landfill. In its complaint in intervention, CalRecycle alleged that it had a direct interest in assuring the adequacy of the financial assurances because it is the named beneficiary on the trust fund instrument and thus has access to the fund to address solid waste issues within its regulatory purview.

*The Sale of the Farrar Property*

In September 2010, the probate court approved the petition of the trustee of the Mary Bonzi Trust to transfer legal title from Mary's estate's interest in the Farrar Property to the Mary Bonzi Trust. In November 2010, Rudy's estate and the Mary Bonzi Trust agreed to sell the Farrar Property to Stephen Endsley; James petitioned the court in the Probate Case for approval of the sale. Respondents filed an objection to the petition, by which they sought to enforce compliance with the 1991 Order and Remediation Order, and requested an order that the net proceeds of the sale of the Farrar Property be dedicated to the satisfaction of Rudy and Mary's estates' obligation for groundwater remediation, closure and post-closure of the Bonzi Landfill. Alternatively, respondents asked the court to order the sale proceeds be placed in the blocked account pending resolution of the Enforcement Action. The court approved the sale subject to an order blocking distribution of the sale proceeds.

That sale did not go through, but in January 2011, Rudy's estate entered into another contract to sell its interest in the Farrar Property to Endsley. James again petitioned the court in the Probate Case for approval of the sale, and respondents again objected. The court confirmed the sale of Rudy's estate's interest in the Farrar Property, but required the net proceeds of the sale of all interests in the property be deposited into a blocked account pending determination of respondents' objection. Trial on that determination commenced on June 10, 2011, but the court vacated the order confirming the sale because the sale again fell through.

Respondents, Rudy's estate, the Mary Bonzi Trust, and Endsley eventually entered into a settlement agreement that allowed the sale to be completed. The agreement provided that the net sales proceeds of the Mary Bonzi Trust's one-half interest in the Farrar Property would be divided into three equal shares and placed into (1) the Mary Bonzi Trust, (2) the Landfill Trust, and (3) a blocked account, while the entire net sales proceeds of Rudy's estate's undivided one-half interest in the Farrar Property would be

16.

placed into the blocked account. The agreement also stated that a hearing would be held to adjudicate the issues raised by respondents' objection, including disposition of the net sales proceeds in the blocked account. Respondents waived all claims against the Farrar Property or that portion of the net sales proceeds to be distributed to the Mary Bonzi Trust. The parties reserved their rights to pursue their respective claims and defenses in the hearing on the respondents' objection and in the Enforcement Action.

The hearing on the respondents' objection took place on April 27, 2012. In their trial brief, respondents argued, inter alia, that (1) the Remediation Order requires any proceeds from the sale of the Farrar Property be deposited in the Landfill Trust, (2) Rudy's estate, Mary and Mary's estate repeatedly conceded their obligation to fund the Landfill Trust, (3) respondents had standing to enforce the Remediation Order as third party beneficiaries to that order, and even if they did not have standing, the court had inherent authority to enforce the Remediation Order, and (4) the financial assurances requirement is not a claim in probate and the Bonzis have conceded that no claim was required. At the hearing, the trial court asked counsel for appellants and respondents questions concerning their positions and heard argument, after which it took the matter under submission.

On May 14, 2012, the trial court issued the minute order from which this appeal is taken, finding that the Farrar Property sale proceeds are subject to the Remediation Order, as well as previous orders of the courts of Stanislaus County. The court took judicial notice of the orders and judgments, including: (1) the 1991 Order and Remediation Order in the Dissolution Action; (2) the RWB orders from 2005-2007; (3) the 2005 stipulated judgment; and (4) orders made by retired judges, the Honorable John Whiteside and David G. Vanderwall. The court found the evidence showed the decedents were the sole shareholders of Ma-Ru and Bonzi Sanitation. The court further found that family law, probate and civil filings, including declarations and letters by counsel or executors for Bonzi, admitted the estates of Rudy and Mary, Mary's trust, and

17.

businesses they owned or controlled, were responsible to fund the landfill cleanup. The court overruled appellants' hearsay objections to these admissions, finding they constituted admissions or judicial admissions, and therefore the statements were exempt from the hearsay rule.

The court rejected appellants' argument that respondents did not have standing or, if standing existed, recovery was barred by the probate claims procedure requirements and statutes of limitation. The court found that respondents were not required to file a claim pursuant to section 9000 et seq., as they were not creditors and were not making a demand for payment of a debt. Instead, they were seeking to enforce standing orders and judgments of the Stanislaus County courts and the RWB, which the Bonzi parties were obligated to perform, and the fact that funds may be required to be disbursed from real property holdings or other assets of the decedents did not require compliance with the Probate Code's claim procedure. Moreover, since the probate court acts as a court of equity, it found the Bonzi parties were estopped due to the many years of litigation wherein the Bonzi parties acknowledged their obligations. The court found respondents had standing because the judgments and orders of the Stanislaus County courts and the RWB are contractual in nature, and respondents had authority to enforce such obligations as third party beneficiaries.

In addition to finding that the proceeds of the Farrar Property sale were subject to payment under the Remediation Order and other court orders, the trial court ordered the executors and trustees of Rudy's estate, Mary's estate, and Mary's trust, to provide additional information regarding the transfer of the Farrar Property to the Mary Bonzi Trust, an accounting of the sales proceeds for Mary's share of the sale, and inventories, which information the court needed before it would determine whether any of the proceeds from the Farrar Property sale would be distributed to the Landfill Trust.

## DISCUSSION

Appellants contend the trial court erred in finding the proceeds of the Farrar Property sale were subject to payment under the Remediation Order and other court orders. Specifically, appellants assert respondents failed to show they had standing to object to the distribution of the sale proceeds as they did not establish (1) they were intended beneficiaries under the 1991 Order and the Remediation Order, or (2) that appellants were bound by the 2005 stipulated judgment or the administrative orders. Appellants further assert that the remedy respondents seek is time-barred, as (1) respondents are asserting a claim against Rudy's estate and therefore were required to file a timely creditor's claim, and (2) respondents' objection is barred by the one-year statute of limitations of Code of Civil Procedure section 366.2. Finally, appellants contend they are not estopped to assert the statute of limitations or claim filing statute.

It is well settled that "'[a] judgment or order of the lower court is presumed correct.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*), italics omitted.) An appellant must affirmatively demonstrate error occurred and, when the appellate record is silent on a matter, the reviewing court must indulge all intendments and presumptions that support the order or judgment. (*Ibid.*) "The trial court's findings of fact are reviewed under the substantial evidence standard. [Citation.] The trial court's conclusions of law are subject to independent review on appeal." (*Madera Oversight Coalition, Inc. v. County of Madera* (2011) 199 Cal.App.4th 48, 65-66.)

We begin with the issue of standing. The trial court found respondents had standing to object to the property sale because they were third party beneficiaries of the judgments and orders of the Stanislaus County court and the RWB. While appellants contend the trial court erred in so finding, we need not decide the merits of their contention because, as respondents asserted below and argue on appeal, the trial court had inherent authority to enforce the Remediation Order regardless of whether respondents had standing to compel its enforcement.

19.

The Remediation Order expressly required the Bonzis to "comply with any mandates/directives" of state governmental agencies such as respondents "pertaining to the groundwater remediation, closure, and post-closure" of the Bonzi Landfill. It also required the Bonzis to encumber or sell their jointly owned real property to fund their joint obligation relating to groundwater remediation, closure and post-closure if revenues from the Bonzi Landfill were insufficient for that purpose. Among the mandates to which the Remediation Order applied was the requirement that owners and operators of landfills post financial assurances to "ensure adequate resources for closure and postclosure maintenance." (Pub. Resources Code, § 43501, subd. (a)(1)(B) & (C); Cal. Code Regs., tit. 27, § 22225, subd. (a)(2).)

The Bonzi Landfill has ceased accepting waste. Therefore, the Bonzis are obligated to fully fund the financial assurances. (Cal. Code Regs., tit. 27, § 22225, subd. (a)(3) ["The fund must be fully funded by the time the last shipment of waste has been received at the disposal facility."].) As stated in an August 2006 cleanup and abatement order, Ma-Ru and Bonzi Sanitation were ordered to have all financial assurance funds fully funded and accepted by CalRecycle by October 15, 2011. Accordingly, the Bonzis have an immediate obligation to fund the shortfall in the Landfill Trust of more than $6 million.

It is undisputed that the revenue of the Bonzi Landfill is insufficient to fund the remediation and closure costs. Therefore, the Remediation Order requires that the real property subject to the order be sold to fund those costs. The Bonzis jointly owned the Farrar Property when the Remediation Order issued. The Farrar Property therefore was subject to the lien placed on it by virtue of the recording of the Remediation Order; that lien remained on the property when Mary transferred her interest in it to Mi Liza as Trustee of the Mary Bonzi Trust. Court approval, as required by the Remediation Order, was not obtained for that transfer. Therefore, the lien followed the property into the Mary Bonzi Trust and encumbers the sale proceeds. (See Civ. Code, §§ 1213, 1214,

20.

1215; Gov. Code, § 27326.)  Since the Farrar Property was jointly owned property subject to the Remediation Order, the proceeds from its sale were required to be deposited into the Landfill Trust to fund the remediation and closure of the Bonzi Landfill.

Since the Remediation Order remains in effect and has not been overturned or set aside, the trial court could not ignore it.  As respondents point out, "[e]very court has power to compel obedience to its judgments and orders [citation], and a court of equity retains inherent jurisdiction to oversee and enforce execution of its decrees."  (*City of Los Angeles v. Silver* (1979) 98 Cal.App.3d 745, 752; Code of Civ. Proc., § 128, subd. (a)(4).)  "A judgment rendered in one department of the superior court is binding on that matter upon all other departments until such time as the judgment is overturned."  (*Ford v. Superior Court* (1986) 188 Cal.App.3d 737, 742.)

Appellants do not contend that the Remediation Order does not require the proceeds of the Farrar Property sale to be placed into the Landfill Trust.  Instead, appellants assert the trial court did not have the inherent power to enforce the Remediation Order because respondents failed to file a creditor's claim in the Probate Case as required by the Probate Code.  Section 9100 states that a creditor must file a claim in a probate proceeding either within four months after the court appoints a personal representative or within 60 days after notice.  The time restriction is intended to ensure the estate's representative is notified of all claims within a reasonable period so that the estate can be expeditiously settled and distributed to the legatees or heirs. (*Varney v. Superior Court* (1992) 10 Cal.App.4th 1092, 1101.)  Failure to comply with these time requirements bars the claim.  (§ 9002, subd. (b).)

Here, the trial court found that respondents were not required to file a creditor's claim because (1) they were not creditors, and (2) they were not making a demand for payment of a debt.  Instead, the trial court found respondents were seeking to enforce standing orders and judgments of the Stanislaus County courts and RWB, which

21.

appellants were obligated to perform, and the disbursal of funds pursuant to those orders did not require compliance with the Probate Code's claim procedures.

As pertinent here, a "claim" is defined as "a demand for payment for any of the following, whether due, not due, accrued or not accrued, or contingent, and whether liquidated or unliquidated: [¶] (1) Liability of the decedent, whether arising in contract, tort, or otherwise." (§ 9000, subd. (a).) A creditor, who must file a claim, "means a person who may have a claim against estate property." (§§ 9000, subd. (c), 9100.) A creditor's claim is nothing "more than a mere judicial determination of the estate's indebtedness in a specified sum to a particular person. When a given claim is allowed [] it thus becomes judicially determined as a debt due the creditor . . . ." (*Magraw v. McGlynn* (1864) 26 Cal. 420, 431.)

Rudy and Mary, as the owners of the entities that operated the Bonzi Landfill, had a statutory obligation to create and fund the Landfill Trust to ensure compliance with their duties to remediate, close and maintain the Bonzi Landfill. Respondents do not own the money in the trust, nor will they be paid any of the deposited funds; instead, the Landfill Trust is established and managed solely to assure payment of the costs of closing the Bonzi Landfill. The Remediation Order creates the method for funding the Landfill Trust – first with revenues from the landfill business and, if a deficiency remains, from the sale of jointly owned real property. By their objection regarding the Farrar Property sale proceeds, respondents are demanding appellants, as executors of Rudy's and Mary's estates, fund the Landfill Trust pursuant to the Remediation Order. Respondents are not demanding payment of money to themselves or any other creditor for work already performed. Instead, they are seeking to enforce Rudy and Mary's own agreement, which is a court order, that proceeds from the sale of jointly owned property be used to fund the Landfill Trust if there is a deficiency. For this reason, they are not making a creditor's claim within the meaning of section 9000; instead, they are enforcing an order of the court.

Appellants do not cite any case supporting their assertion that enforcement of a court order, such as the one at issue here, constitutes a "claim" under the Probate Code. In *Wood v. Brown* (1974) 39 Cal.App.3d 232, 236, the Court of Appeal held that the plaintiff's right to recover against the defendant, who the plaintiff had sued to recover sums of money on various theories, was contingent on his having presented a claim in the probate proceeding, "[s]ince plaintiff seeks a money judgment in this action . . . ." Here, respondents do not seek a money judgment; instead, they seek to enforce the Remediation Order's requirement that the Farrar Property sale proceeds be used to fund the remediation and closure of the Bonzi Landfill. For this same reason, appellants' reliance on *Taylor v. George* (1949) 34 Cal.2d 552, 557-558, and *Nathanson v. Superior Court* (1976) 12 Cal.3d 355, 359-362, 369, is misplaced.

Citing *Bradley v. Breen* (1999) 73 Cal.App.4th 798 (*Bradley*), appellants assert that it does not matter whether respondents are asking for an equitable remedy, "since an 'equitable' demand for money is a 'claim.'" In *Bradley*, the appellants, who had been sued four years after the decedent's death on a theory they had aided and abetted the decedent's molestation of the plaintiff, cross-complained against the decedent's estate for indemnification. (*Id.* at p. 800.) The Court of Appeal held the cross-complaint for equitable indemnity was barred by Code of Civil Procedure section 366.2, which provides for a statute of limitation of one year from the date of death for claims against the decedent that survive the death, whether those claims are accrued or not accrued. (*Bradley*, *supra*, at pp. 801, 804-805.) In so holding, the court concluded the ordinary rules for accrual of an indemnity claim do not affect the time limit to file an action under Code of Civil Procedure section 366.2. (*Bradley*, *supra*, at pp. 804-805.) The court did not address whether enforcing a requirement in a court order, such as the Remediation Order, which does not demand a payment of money to a particular creditor, is a claim.

In sum, respondents are not creditors of either estate to whom a debt is owed and they are not making a demand for another's benefit, as they are not demanding the

payment of money to a creditor. Neither are they asserting that an obligation created by statute is exempt from the claims filing requirement. Instead, they simply are seeking to enforce the requirement in the Remediation Order that the assets pledged to satisfy the financial assurances requirement be used for that purpose. Therefore, respondents were not required to file a claim under section 9100. Nor were they required to bring suit within one year of Rudy's death under Code of Civil Procedure section 366.2,[5] as they are not bringing an action for damages against Rudy's estate; instead, they are asking the trial court to enforce a prior court order.

In any event, as the trial court found, due to the many years of litigation wherein appellants acknowledged their obligation to fund the Landfill Trust, appellants are estopped from asserting that obligation required respondents to file a creditor's claim under section 9100. The doctrine of equitable estoppel is codified in Evidence Code section 623, which states: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." Executors of estates may be estopped, by their conduct and statements, from asserting a failure to file a claim under the Probate Code as a bar to claims against estates. (*In re Estate of Prindle* (2009) 173 Cal.App.4th 119, 132-133 (*Prindle*); *Katz v. A.J. Ruhlman & Co.* (1945) 69 Cal.App.2d 541, 545; see also *Battuello v. Battuello* (1998) 64 Cal.App.4th 842, 847-848 [equitable estoppel may be applied to prevent the

---

[5] Code of Civil Procedure section 366.2, subdivision (a) provides: "(a) If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply."

24.

assertion of the Code of Civil Procedure section 366.2 statute of limitations as a defense].)**6**

A party claiming an estoppel must prove four elements: (1) the party to be estopped must know the facts; (2) the estopped party must intend that his conduct shall be acted upon, or must act in a way that causes the other party to believe that was his intent; (3) the party asserting estoppel must be unaware of the true facts; and (4) he must detrimentally rely on the other party's conduct. (*Estate of Bonanno* (2008) 165 Cal.App.4th 7, 22.) If an estoppel is established, the estopped party is deprived of applicable rights or defenses. (*Ibid.*) While estoppel generally is a question of fact, if the facts are undisputed and only one reasonable conclusion can be drawn from them, it becomes a question of law. (*Ibid.*)

The evidence before the trial court showed that, in numerous letters and court filings, both Rudy and Mary, as well as their executors and attorneys, expressly acknowledged the obligation of their estates to fund the Landfill Trust and advocated that the financial assurances requirement was not a claim under the Probate Code. For

---

**6** In their opening brief, appellants assert in a footnote that if we "hold that *Prindle* is on point," the court in *Prindle* "was without statutory authority to apply the doctrine of equitable estoppel[,]" citing section 9253, which states that "[a] claim barred by the statute of limitations may not be allowed by the personal representative or approved by the court or judge." By raising this point in a footnote and failing to develop the argument in their opening brief, we may treat this point as forfeited. (*California Farm Bureau Federation v. California Wildlife Conservation Bd.* (2006) 143 Cal.App.4th 173, 192-193; *Conservatorship of Hume* (2006) 139 Cal.App.4th 393, 395, fn. 2; *Tilbury Constructors, Inc. v. State Compensation Ins. Fund* (2006) 137 Cal.App.4th 466, 482; Cal. Rules of Court, rule 8.204, subd. (a)(1)(B).) While appellants do expound on this point in the reply brief, we do not consider arguments raised for the first time in a reply brief. (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427-428.) Even so, as respondents note, section 9253 does not apply to the doctrine of estoppel. As explained in *Battuello*, *supra*, 64 Cal.App.4th at pp. 847-848, "[e]quitable estoppel . . . is not concerned with the running and suspension of the limitations period . . . . equitable estoppel operates directly on the defendant without abrogating the running of the limitations period . . . ."

example, in 1994, the co-executor of Rudy's estate told the financial assurances section of the CIWMB that he was sending money for the Landfill Trust; in 1997, James and his co-executor had the Remediation Order entered in the Dissolution Action, and their attorney acknowledged the obligation of Rudy's estate and Mary to fund the financial assurance requirements of the Remediation Order; in 2004, James sought to have the terms of the Remediation Order complied with by both Mary and Rudy's estate; in 2005, James again acknowledged that both Mary and Rudy's estate were obligated to the CIWMB to fund the Landfill Trust; also in 2005, Mary argued in the Probate Case that the Remediation Order was enforceable against Rudy's estate and Rudy's estate was not relieved of its obligation to fund the Landfill Trust even though CIWMB failed to file a creditor's claim; and in 2006, James petitioned in the Probate Case for an order confirming the sale of two jointly owned properties to satisfy respondents' requirements that additional money be paid into the Landfill Trust. The evidence shows that, for decades, Rudy's estate has conceded its obligation to fund the Landfill Trust. Having done so, appellants are estopped to now assert that respondents may not perform their statutory obligations because they failed to file a claim more than 20 years ago.

In asserting that the trial court erred in finding estoppel applied, appellants challenge only the element of reliance, arguing that respondents "introduced zero evidence showing that their failure to file a claim was 'induced' by anything said or done by any of Rudy Bonzi's estate's representatives."[7] Specifically, appellants contend there

_____

[7] Respondents contend appellants have waived any challenge based on sufficiency of the evidence because appellants failed to set forth in their opening brief any of the evidence respondents submitted in support of their estoppel claim. A party challenging sufficiency of the evidence must set forth all material evidence, including evidence harmful to the party's position. (*Foreman & Clark Crop. v. Fallon* (1971) 3 Cal.3d 875, 881.) Failure to do so results in the claim being deemed waived. (*Ibid.*; see also *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) While we agree appellants failed to set forth the evidence on estoppel, we nevertheless exercise our discretion to address appellants' assertion.

26.

is no evidence that anyone admitted respondents' assertions did not amount to a claim or advised respondents that a claim did not need to be filed and, even so, there is no direct evidence respondents relied on any such statements or conduct in not timely filing a claim.

As respondents point out, estoppel may be proven by reasonable inferences drawn from the evidence.  (See, e.g., *Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 49 (*Blix Street Records*) [trial court properly inferred from the evidence a judge's reliance on representations made concerning a settlement agreement; "[w]hen different inferences may be drawn from undisputed facts, the appellate court should accept the inference drawn by the trial court, unless that inference is inconsistent with clear, positive and uncontradicted evidence."].)  Here, respondents' reliance on the conduct and statements of the Bonzis and their executors to forebear filing claims under the Probate Code and from initiating legal action within the time required under Code of Civil Procedure section 366.2 may reasonably be inferred from, inter alia: (1) the representation by the executor of Rudy's estate in 1994 that the probate court had "cleared the way for funding of needed expenses for the Landfill Closure Account"; (2) the declaration made by CalRecycle employee Richard Castle, on Mary's behalf, in which he acknowledged Mary and Rudy's estate were current on their financial assurances obligation; and (3) the November 2008 letter informing the RWB that the estates of Rudy and Mary sold a recycling business to "fund the ongoing environmental compliance requirements of the Regional Board."

While, as appellants assert, certainty is essential to all estoppels (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1318), this does not mean that the elements of estoppel may not be proven by inferences.  Instead, what is essential is that the representation, whether express or implied from the party's conduct, justifies a prudent person acting upon it and is "plain and not doubtful."  (*General Motors Acceptance Corp. v. Gandy* (1927) 200 Cal. 284, 297-298.)  Here, it is clear that, until the

sale of the Farrar Property, appellants had acted as if the estates were obligated to fund the Landfill Trust pursuant to the Remediation Order even though a creditor's claim had not been filed in either estate. Based on this, respondents proceeded as if a claim were not required to be filed. The harm to respondents from appellants' repeated representations that the Bonzi estates were responsible to fund the Landfill Trust is apparent, as respondents were lulled into delaying enforcement of the financial assurances requirements, to the point of even providing a declaration that assisted Rudy's estate and Mary in obtaining court approval of their settlement with Rudy's widow, Lynda. This resulted in the distribution of a significant portion of the assets of Rudy's estate free of the lien of the Remediation Order.

Rudy's estate and Mary both benefited for years by using the Remediation Order and their obligation to fund the Landfill Trust as a shield to prevent distributing estate property to Lynda. Now, after benefiting from the settlement with Lynda, they seek to disclaim that obligation, and more than a decade of compliance with it. Indulging all intendments and presumptions in support of the trial court's estoppel finding, as we must (*Denham, supra,* 2 Cal.3d at p. 564), and accepting inferences from the evidence in the light most favorable to the finding (*Blix Street Records*, *supra*, 191 Cal.App.4th at p. 49), it must be upheld.[8]

---

[8] Since we find in respondents' favor on the claims and estoppel issues, we do not address their alternative arguments that (1) appellants waived the claims filing requirements, (2) that those requirements did not apply because the obligations arose, in part, after the deaths of Rudy and Mary, and (3) even if a claim were required, respondents could enforce the Remediation Order under section 9391.

28.

## **DISPOSITION**

The probate court's May 14, 2012 order is affirmed.  Respondents shall recover their costs on appeal.

                                                _____

                                                          Gomes, J.

WE CONCUR:


_____

Wiseman, Acting P.J.


_____

Peña, J.