Filed 10/31/13  BCS Investments v. Lorenz CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BCS INVESTMENTS, INC. et al. | D061999 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-00096327-CU-FR-CTL) |
| MARGUERITE C. LORENZ, as Successor Trustee, etc., et al, | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Law Offices of Fred S. Pardes and Fred S. Pardes for Plaintiffs and Appellants.

Solomon, Ward, Seidenwurm & Smith, Tanya M. Schierling for Defendant and Respondent Marguerite C. Lorenz.

John David Feher, Vekeno Kennedy for Defendant and Respondent First Security Mortgage Home Loans, Inc.

Plaintiffs and appellants BCS Investments, Inc. and Fred S. Pardes, in his capacity as trustee for the Fred S. Pardes and Michelle K. Pardes Family Trust, appeal from judgments entered after the trial court sustained without leave to amend the demurrers of defendants and respondents First Security Mortgage Home Loans, Inc. (First Security) and Marguerite C. Lorenz (Lorenz), in her capacity as successor trustee of the William H. Boehmler Trust (at times, the Boehmler trust). The trial court ruled plaintiffs' causes of action were time-barred under Code of Civil Procedure[1] section 366.2, which requires all claims against a decedent to be filed within one year of death, and that they were also barred by the statute of frauds. On appeal, plaintiffs challenge the constitutionality of section 366.2 and its application to this action, as well as defendants' ability to assert it as a defense.[2] They further contend the trial court erred in its rulings because the statute of frauds is not a defense to the action; they are entitled to a resulting trust; and liberally construed, the complaint alleges facts sufficient to state causes of action. Finally, plaintiffs contend the court erred by failing to grant them leave to amend. We affirm the judgments.

---

[1]    All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]    Specifically, plaintiffs contend: (1) section 366.2 is unconstitutional absent written notice of a decedent's death to creditors; (2) section 366.2 is inapplicable to this action because it does not involve the personal misconduct of the former trustee; (3) defendants should be equitably estopped from asserting section 366.2 as an affirmative defense; (4) defendants' failure to institute probate proceedings precludes section 366.2's application; and (5) the statute of limitations did not begin to run until their discovery of defendants' fraud and negligence on April 1, 2010.

FACTUAL AND PROCEDURAL BACKGROUND

We assume the truth of the well-pleaded allegations of plaintiffs' operative first amended complaint, as well as matters that are properly judicially noticeable (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865), and we state the underlying facts from these matters.[3]

In January 2004, First Security, at the request of the Boehmler trust, had Raymond Taylor conduct an appraisal of a condominium, living unit H, located at 3920 Riviera Drive, San Diego (the property), which is a heavily populated beach area. The written appraisal report states the property has a two-car carport. In January 2005, First Security and Boehmler in his capacity as trustee for the Boehmler trust entered into a written trust deed service agreement that appointed First Security and its agent Paul Rios to service a promissory note and deed of trust secured by the property. The trust deed, which was recorded in January 2005, designated trustee Boehmler as the beneficiary, and Toni Christiani and William Sullivan as the borrowers.

---

[3]     Under these principles, we disregard the legal conclusions and argumentative allegations contained in plaintiffs' first amended complaint, including allegations that an appraiser "negligently performed" an appraisal; that the "appraisal became part of the contract between the Plaintiffs and the Trust"; that the plaintiffs "were under no obligation to search the public records to confirm the information" in the appraisal; payment of a commission "affirms [a party's] agency with the Trust"; that the agreement for sale and purchase of the note and trust deed "is null and void"; that "there was a total failure of consideration" as a result of the absence of carports; that a "resulting Trust and/or Equitable Lien exists over the Trust assets"; that plaintiffs' claims "did not ripen" until August 20, 2010, or August 24, 2010; that the lack of notice of a party's death "equitably estops [defendants] from asserting Probate Code section 366.2 . . . as a defense to this action"; any applicable statute of limitations is "equitably tolled"; and section 366.2 "is a taking of property without due process, making it unconstitutional." (*Financial Corp. of America v. Wilburn* (1987) 189 Cal.App.3d 764, 768-769.)

3

In April 2007, plaintiffs met Bruce Douthit, an agent for the Boehmler trust, to discuss the possibility of purchasing the note and deed of trust. During various telephone conversations during April and May 2007, plaintiffs were told that the note and trust deed were valuable and marketable as they were secured by property with two designated carports. On April 17, 2007, Rios presented the appraisal report to plaintiffs through delivery to Douthit, and Douthit gave plaintiffs the appraisal report two days later. Relying on the appraisal report's accuracy, plaintiffs agreed to purchase the property.

In May 2007, Douthit delivered a written cashier's check payable to Boehmler, as trustee, in the amount of $198,032.87. In a written memorandum, Rios acknowledged receipt of those funds "acting on behalf of First Security . . . ." and signed the memo as an "authorized agent." Boehmler signed the check and executed an assignment of the deed of trust to plaintiffs. The assignment, which describes the property with reference to a condominium plan recorded on August 23, 1973, was recorded on May 21, 2007. Boehmler died on August 2, 2008.

In May 2009, Christiani and Sullivan defaulted on their obligations under the promissory note. On April 1, 2010, plaintiffs discovered that the property did not have two designated carports. Rather than continue to spend money on the property, they decided it was best to let the property go into foreclosure, and they lost title to it on August 24, 2010. On November 10, 2010, plaintiffs demanded in writing to rescind their purchase of the note and trust deed, but defendants refused to rescind the transaction.

On February 24, 2011, plaintiffs filed a complaint for fraud, negligent misrepresentation, rescission, breach of contract and negligence. First Security and

4

Lorenz each filed a demurrer. First Security asserted the complaint failed to state facts sufficient to constitute a cause of action and its allegations were uncertain. Attaching the deed of trust recorded on January 26, 2005, it pointed out the trust deed did not describe the property as having any designated carport spaces. In part, it argued based on the trust deed, as well as the recorded condominium plan for the property, that plaintiffs discovered or should have discovered the absence of designated carports on or before May 21, 2007, when the assignment was recorded. Accordingly, First Security argued, plaintiffs' causes of action were barred by their respective statutes of limitation. First Security further argued plaintiffs' complaint contained no specific facts as to it, and was fatally uncertain.

Lorenz similarly argued plaintiffs' complaint failed to state facts sufficient to constitute causes of action, but she additionally argued their causes of action were time-barred by the one-year statute of limitations of section 366.2 given Boehmler's August 2, 2008 death, and were barred by the statute of frauds. Specifically, she argued plaintiffs had not shown the existence of a writing subscribed by any trustee of the Boehmler trust; the assignment of the trust deed did not mention any carports and could not constitute the written agreement; and plaintiffs could not show a writing signed by any trustee that authorized Douthit or any other person to act as an agent for the Boehmler trust.

Before the hearing on First Security's demurrer, the trial court sustained Lorenz's demurrer with leave to amend and plaintiffs filed a first amended complaint containing the same causes of action. In part, plaintiffs alleged defendants deliberately or negligently made misrepresentations, or deliberately withheld information, concerning

5

the existence of carports in order to induce them to purchase the note and trust deed; defendants breached the written assignment by failing to deliver a separate assignment of the note and also by delivering an invalid assignment of the trust deed; and defendants owed them a duty to accurately disclose information about the type and quality of the property securing the note and deed of trust, and negligently disclosed inaccurate information on May 21, 2007.

Lorenz and First Security refiled their demurrers, which the court sustained without leave to amend. As to Lorenz, the court ruled plaintiffs' claims were barred by the section 366.2 statute of limitations and the statute of frauds. It observed it had previously permitted plaintiffs leave to amend and plaintiffs offered no argument as to how future amendment would cure the defects in their pleading. As to First Security, the court ruled the breach of contract cause of action was time-barred, and the entire first amended complaint was barred by the statute of frauds. Plaintiffs appeal.[4]

DISCUSSION

I. *Standard of Review*

---

[4] As to Lorenz, plaintiffs' notice of appeal states they are appealing a "[j]udgment of dismissal after an order sustaining a demurrer," but the notice of appeal erroneously identifies the court's April 13, 2012 order sustaining Lorenz's demurrer without leave to amend, not the ensuing April 27, 2012 judgment. The April 13, 2012 order is not appealable (*Los Altos Golf and Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 202), but because a judgment has actually been entered, we will liberally construe the notice of appeal (*ibid.*; Cal. Rules of Court, rules 8.100(a)(2), 8.104), as from the judgment of dismissal entered April 27, 2012. (See also *Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1090, fn. 4.)

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, . . . [w]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law." (*City of Dinuba v. County of Tulare*, *supra*, 41 Cal.4th at p. 865.) We review the complaint de novo and determine whether the pleading alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba*, at p. 865.) Plaintiffs may show that an amendment would cure the defect for the first time to the reviewing court. (*San Diego City Firefighters, Local 145 v. Board of Administration etc.* (2012) 206 Cal.App.4th 594, 606.) If the judgment is correct on any ground stated in the demurrer, we will affirm it regardless of the trial court's stated reasons. (*Id*. at p. 605; *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312.)

## II. *Statute of Frauds*

In ruling on both demurrers, the trial court ruled plaintiffs' complaint in its entirety was barred by the statute of frauds. Plaintiffs contend the exhibits attached to their complaint show sufficient writings to preclude its application. Alternatively, they argue respondents should be equitably estopped from asserting the statute of frauds because they have received the benefit of plaintiffs' full performance, and the statute does not

7

apply to a fully-executed oral agreement.[5]  The trial court did not provide reasoning for its ruling, and we conclude it was incorrect.

Under the statute of frauds, certain contracts, including contracts for the sale of real property or an interest in real property, "are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged . . . ." (Civ. Code, § 1624; *Sterling v. Taylor* (2007) 40 Cal.4th 757, 761 & fn. 5.)  The party to be charged means " ' "the party to be charged in court with the performance to the obligation, i.e., the *defendant* in the action brought to enforce the contract." ' "  (*Secrest*, *supra*, 167 Cal.App.4th at p. 553.)  The statute of frauds "does not require a written contract; a 'note or memorandum . . . subscribed by the party to be charged' is adequate. [Citation.]  . . .  [I]n most instances it is not even necessary that the parties intended the memorandum to serve a contractual purpose.  [fn.]  [Citations.]  [¶]  A memorandum satisfies the statute of frauds if it identifies the subject of the parties' agreement, shows that they made a contract, and states the essential contract terms with reasonable certainty.  [Citations.]  'Only the essential terms must be stated, " 'details or particulars'

_____

[5]      Plaintiffs' assertion of estoppel is unavailing, as their only claim of performance is payment of $207,000.  It is true that a contract subject to the statute of frauds that lacks the requisite writing can be enforced when a party has partially performed.  (*In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1108.)  Part performance means the party seeking enforcement of the contract changed position to "such an extent that the application of the statute of frauds would result in an unjust or unconscionable loss, amounting in effect to a fraud."  (*Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 555 (*Secrest*); see also *Anderson v. Stansbury* (1952) 38 Cal.2d 707, 715.)  But payment of money is not sufficient part performance to invoke estoppel to assert the statute of frauds because the party paying money has an adequate legal remedy.  (*Anderson v. Stansbury*, at p. 716; *Secrest*, at p. 555.)

need not [be]. What is essential depends on the agreement and its context and also on the subsequent conduct of the parties . . . ." ' " (*Sterling v. Taylor*, at p. 766.)

"[T]he writing requirement of the statute of frauds ' "serves only to prevent the contract from being unenforceable" [citation]; it does not necessarily establish the terms of the parties' contract.' [Citation.] Unlike the parol evidence rule, which 'determines the enforceable and incontrovertible terms of an integrated written agreement,' the statute of frauds 'merely serve[s] an evidentiary purpose.' " (*Sterling v. Taylor*, *supra*, 40 Cal.4th at p. 766.) That is, the doctrine requires " 'reliable evidence of the existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts never in fact made. The contents of the writing must be such as to make successful fraud unlikely, but the possibility need not be excluded that some other subject matter or person than those intended will also fall within the words of the writing. Where only an evidentiary purpose is served, the requirement of a memorandum is read in the light of the dispute which arises and the admission of the party to be charged; there is no need for evidence on points not in dispute.' " (*Id*. at pp. 766-767, italics omitted.)

Lorenz's main position is that plaintiffs failed to allege a valid contract because the written assignment lacks essential terms. She argues the assignment recorded on May 21, 2007, is not an agreement to convey a security interest in a condominium *with two carports*; that the assignment "says nothing about any carports." And, she points out, the appraisal report, which plaintiffs allege became a part of the contract, is neither signed by Boehmler nor accompanied by anything in writing authorizing Taylor to be Boehmler's agent. First Security makes a similar argument, citing authority for the proposition that

9

"[i]n the statute of frauds context, it is well accepted that an agreement for the sale of real property must contain all essential elements of the agreement." It maintains the trial court did not abuse its discretion in determining that the statute of frauds bars plaintiffs' causes of action.

Respondents' arguments are unconvincing. It is a question of law whether a memorandum, considered in light of the circumstances surrounding its making, complies with the statute of frauds. (*Sterling v. Taylor*, *supra*, 40 Cal.4th at p. 772.) " 'The Statute of Frauds was not enacted to afford persons a means of evading just obligations; nor was it intended to supply a cloak of immunity to hedging litigants lacking integrity; nor was it adopted to enable defendants to interpose the Statute as a bar to a contract fairly, and admittedly, made. In brief, the Statute "was intended to guard against the perils of perjury and error in the spoken word." Therefore, if after a consideration of the surrounding circumstances, the pertinent facts and all the evidence in a particular case, the court concludes that enforcement of the agreement will not subject the defendant to fraudulent claims, the purpose of the Statute will best be served by holding the note or memorandum sufficient even though it is ambiguous or incomplete.' " (*Sterling v. Taylor*, *supra*, 40 Cal.4th at pp. 770-771.)

In *Sterling v. Taylor*, *supra*, 40 Cal.4th 757, the California Supreme Court explained that "[a] memorandum of a contract for the sale of real property must identify the buyer, the seller, the price, and the property." (*Id*. at p. 772.) Here, the parties entered into an assignment of all beneficial interest in the trust deed secured by real property, not a contract for the sale of the property itself. But the assignment to plaintiffs

10

was in writing and executed by Boehmler as trustee of the Boehmler trust; the assignment identified plaintiffs as the assignees; it states plaintiffs gave valuable consideration; and the assignment contains the street address and a legal description of the real property at issue. Furthermore, there need not be a single contract or even a contractual purpose on the part of the parties, more than one memorandum can make up the agreement, the party to be charged need not sign all of the documents, and extrinsic evidence is admissible to explain any deficient description in the memorandum. (*Sterling v. Taylor*, *supra*, 40 Cal.4th at pp. 766, 768, 770, fn. 9 [discussing *Brewer v. Horst & Lackmund Co.* (1900) 127 Cal. 643, which interpreted two telegrams in light of the circumstances under which they were made and held that together they constituted the memorandum and were sufficient for purposes of the statute of frauds; *Brewer* "plainly endorsed the consideration of extrinsic evidence not merely to 'define the limits' of the parties' agreement, but to determine in the first instance whether the telegrams reflected a contract with sufficient certainty to comply with the statute of frauds"]; *Frost v. Alward* (1917) 176 Cal. 691; *Derrick v. C.W.R. Ford Co.* (1915) 27 Cal.App. 456.) Here, the purchase price is reflected in Rios's May 18, 2007 handwritten acknowledgment of receipt, attached as an exhibit to plaintiffs' complaint, and that receipt constitutes evidence of the surrounding circumstances in the assignment's making that we are entitled to consider to explain the term "a valuable consideration" (capitalization omitted) referenced in the assignment. (See *Sterling*, at p. 767 [extrinsic evidence can be used "to *explain* essential terms that were understood by the parties but would otherwise be unintelligible to others"]; see also *First Nat'l Mortg. Co. v. Federal Realty Inv. Trust* (9th

11

Cir. 2011) 631 F.3d 1058 [applying California law, and explaining that "[t]he mere fact that a lease term is 'essential' does not mean it has to be *express* in the contract"].)

We disagree with the argument that the existence of two designated carports was an essential term of the assignment for purposes of applying the statute of frauds, and that the absence of that term thus renders the assignment unenforceable. Of the two authorities cited by First Security for this proposition, one was decided before *Sterling* and the other—*Patel v. Liebermensch* (2007) 154 Cal.App.4th 373—which involved the remedy of specific performance of an option contract, was overruled in *Patel v. Liebermensch* (2009) 45 Cal.4th 344, 346-347. Rather, *Sterling* explains that " '[a] written memorandum is not identical with a written contract [citation]; it is merely evidence of it *and usually does not contain all of the terms*.' " (*Sterling v. Taylor*, *supra*, 40 Cal.4th at p. 766, quoting *Crowley v. Modern Faucet Mfg. Co.* (1955) 44 Cal.2d 321, 323.) The fact the property securing the trust deed may or may not have had carports is the sort of " ' " 'detail[] or particular[]' " ' " (*Sterling*, at p. 766) that need not be specified for the doctrine's purpose, which is merely to "prevent enforcement through fraud or perjury of contracts never in fact made." (*Ibid*.) We emphasize, as the *Sterling* court observed, that the statute of frauds is not the same as the parol evidence rule, which " 'determines the enforceable and incontrovertible terms of an integrated written agreement . . . .' " (*Ibid*.)

In sum, given the nature of the written assignment at issue and its contents, the statute of frauds does not bar plaintiffs' causes of action relating to its enforcement.

III.  *Application of Section 366.2*

In demurring to plaintiffs' first amended complaint, Lorenz invoked the one-year statute of limitation of section 366.2.  Plaintiffs contend that limitations period does not apply to their causes of action against her.  Relying on *Stoltenberg v. Newman* (2009) 179 Cal.App.4th 287 (*Stoltenberg*) and *Estate of Yool* (2007) 151 Cal.App.4th 867 (*Yool*), they argue their causes of action do not involve trustee Boehmler's personal misconduct, but rather the misconduct of his agents, Rios, Douthit and/or First Security, to whom he delegated his duties and obligations.  Plaintiffs further maintain that, as pleaded, all five causes of action did not accrue until August of 2010, when they first sustained damages from losing the property to foreclosure.

"Section 366.2 is a 'general statute of limitations for all claims against a decedent.' "  (*Dacey v. Taraday* (2011) 196 Cal.App.4th 962, 980, quoting *Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 255.)  Subdivision (a) of section 366.2 limits a creditor's time for filing an action to one year after the date of death:  "If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death . . . ."  (§ 366.2, subd. (a).)  Subdivision (b) of the statute provides:  "The limitations period provided in this section for commencement of an action *shall not be tolled or extended for any reason except* as provided in" certain specifically enumerated situations, including for creditor claims in

the administration of estates of decedents.[6] (§ 366.2, subd. (b); *Dacey*, at p. 980.) The statute "is not concerned with possible claims against estate property. Rather, this statute, when considered within the context of contracts, applies to claims against the estate on all *causes of action* on a decedent's debts when the causes of action survive the decedent's death. Thus, under the statute of limitations, a party has an obligation to file an action when the party fails to perform as promised." (*Dacey*, at p. 982.)

Section 366.2 will not apply when the debt was not enforceable against the decedent during his or her life. (*Dacey v. Taraday*, *supra*, 196 Cal.App.4th at p. 986 [holding section 366.2 did not apply where decedent did not breach the contract (a dissolution agreement involving obligations contingent upon a settlement or victory in certain litigation) before his death, and the breach was committed after the decedent's death by the administrator of the decedent's estate].) But it will bar an action when the breach or misconduct occurs before the decedent's death and the claim is not discovered while the decedent is alive. (*Id*. at p. 983; see *Wagner v. Wagner*, *supra*, 162 Cal.App.4th at p. 256; *Bradley v. Breen* (1999) 73 Cal.App.4th 798, 800 [the statute "governs causes

---

6      In full, section 366.2, subdivision (b) states: "The limitations period provided in this section for commencement of an action shall not be tolled or extended for any reason except as provided in any of the following, where applicable: [¶] (1) Sections 12, 12a, and 12b of this code. [¶] (2) Part 4 (commencing with Section 9000) of Division 7 of the Probate Code (creditor claims in administration of estates of decedents). [¶] (3) Part 8 (commencing with Section 19000) of Division 9 of the Probate Code (payment of claims, debts, and expenses from revocable trust of deceased settlor). [¶] (4) Former Part 3 (commencing with Section 21300) of Division 11 of the Probate Code (no contest clauses), as that part read prior to its repeal by Chapter 174 of the Statutes of 2008."

of action against a decedent that existed at the time of death, 'whether accrued or not accrued' "].)

Here, the gravamen of plaintiffs' causes of action for fraud, negligent misrepresentation, rescission, breach of contract and negligence is that in April and May 2007, before his death, Boehmler, via his agents Rios, Douthit, and/or First Security, intentionally or negligently made misrepresentations to plaintiffs about the property securing the trust deed, causing them damages upon the property's foreclosure. The misrepresentations were made in telephone conversations and meetings in Orange County or via delivery of the January 2004 appraisal report, which was prepared at the request of First Security. Plaintiffs generally allege that each defendant acted as the agent or employee of the other defendants at all times, the defendants "did all things alleged here within the scope and course of such agency or employment," and the defendants "authorized and ratified" the acts of the other defendants. These are proper allegations of agency giving rise to Boehmler's liability as a principal. (See *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1110-1112 [agency allegations are subject to general pleading requirements]; *see Grigsby v. Hagler* (1938) 25 Cal.App.2d 714, 715 ["[A] principal is liable to third parties . . . for the frauds or other wrongful acts committed by such agent in and as a part of the transaction of [the principal's] business"].)

Plainly, "had [Boehmler] been alive, any [contract or] tort action arising out of the acts alleged by plaintiffs would have been against him, either individually or as trustee, or both; and trust assets as well as his personal assets might have been reached for his

15

liability." (*Stoltenberg*, *supra*, 179 Cal.App.4th at p. 295.)  The fact their claims could also be asserted against Boehmler's agents does not take this outside of a claim for " '[l]iability of the person,' " which means " ' "[l]iability for which one is personally accountable and for which a wronged party can seek satisfaction out of the wrongdoer's personal assets." ' " (*Dacey v. Taraday*, *supra*, 196 Cal.App.4th at p. 982, quoting *Yool*, *supra*, 151 Cal.App.4th at p. 875.)

Stoltenberg does not compel a different result.  In *Stoltenberg*, decided on appeal from a summary judgment, the plaintiffs sued a successor trustee of a trust for the alleged fraud of the predecessor trustee, Newman, who died before the complaint was filed. (*Stoltenberg*, *supra*, 179 Cal.App.4th at pp. 290-291.)  Responding to the plaintiffs' argument that their action was against the trust, and not the trustee (*id*. at p. 293), the Court of Appeal held that section 366.2 applied to the action against the successor trustee for the deceased predecessor's own communications on the trust's behalf concerning the refinance of a retail center.  (*Stoltenberg*, at pp. 290-291, 293, 295-296.)  According to the court, "Newman's communications that are the subject of this action were made as trustee of the Newman Family Trust and on its behalf" (*id*. at p. 293) and thus plaintiffs' claims were "for the personal misconduct of the settlor/trustee on behalf of and for the benefit of the trust, that was completed entirely before the settlor/trustee died, and for which the settlor/trustee could have been held personally liable." (*Id*. at p. 296.)  Here, as in *Stoltenberg*, the alleged misrepresentations were made and/or ratified by Boehmler or his agents and they occurred before Boehmler's death.  Thus, section 366.2 bars plaintiffs' claims against Lorenz as the successor trustee for Boehmler's actions.

16

Nor does plaintiffs' reliance on *Yool*, *supra*, 151 Cal.App.4th 867 assist them. There, the decedent had bequeathed all of her property into a trust with her four children as beneficiaries. (*Id*. at p. 870.) The decedent and her daughter had purchased a residence together, but that property was not placed in the decedent's trust before her death. (*Ibid*.) After the decedent's death, the daughter, via Probate Code petition, asserted a claim for a resulting trust in her favor on the ground the decedent had not provided consideration for the residence, never intended to take beneficial title, and accepted legal title merely as an accommodation to facilitate financing. (*Id*. at p. 871.) Her siblings asserted the petition was barred by section 366.2. (*Ibid*.)

The *Yool* court held that section 366.2 did not apply for two reasons. First, a claim for a resulting trust, which arose under operation of law and did not implicate the personal liability of the purported trustee, did not state a cause of action " 'on a liability of the person' " as required to invoke section 366.2. (*Yool*, *supra*, 151 Cal.App.4th at pp. 875-876.) Second, at the time of the decedent's death, nothing had occurred to affect the rights of her daughter; that is, the decedent never repudiated the agreement or showed any resistance to conveying the property to the plaintiff before death. (*Id*. at p. 877.) Accordingly, no cause of action, accrued or not yet accrued, existed at the time of the decedent's death and thus no action that could have been commenced on that cause. (*Id*. at pp. 876-877.) Indeed, the facts were that the decedent would have conveyed title to the daughter had the daughter asked, and "[t]he legal issue of who owned the [residence] and to whom it should be conveyed only arose *after* [the decedent's] death." (*Ibid.*)

17

IV. *Arguments That Application of Section 366.2 Is Precluded*

Anticipating our conclusion that section 366.2 bars their claims against Lorenz, plaintiffs argue we should conclude (1) Lorenz is equitably estopped from asserting the statute as a defense; (2) the statute is unconstitutional absent some requirement of written notice to a decedents' creditors; (3) the trust's failure to institute probate proceedings precludes its application; (4) the delayed discovery rule applies; and (5) Probate Code section 19008 applies and entitles them to a resulting trust by operation of law, precluding application of section 366.2.

A. *Equitable Estoppel*

Equitable estoppel, in the context of statutes of limitation, " ' "comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." '  Unlike the doctrine of equitable tolling, which takes its life from the statute of limitations itself, the doctrine of equitable estoppel ' "takes its life . . . from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice." ' "  (*Cordova v 21st Century Ins. Co.* (2005) 129 Cal.App.4th 89, 96, fns. omitted, quoting *Battuello v. Battuello* (1998) 64

18

Cal.App.4th 842, 847-848, superseded by statute as stated in *Stewart v. Seward* (2007) 148 Cal.App.4th 1513, 1522, fn. 6.)[7]

"A party claiming an estoppel must prove four elements: (1) the party to be estopped must know the facts; (2) the estopped party must intend that his conduct shall be acted upon or must act in a way that causes the other party to believe that was his intent; (3) the party asserting estoppel must be unaware of the true facts; and (4) he must detrimentally rely on the other party's conduct. [Citation.] If an estoppel is established, the estopped party is deprived of applicable rights or defenses. [Citation.] While estoppel generally is a question of fact, if the facts are undisputed and only one reasonable conclusion can be drawn from them, it becomes a question of law." (*Estate of Bonzi*, *supra*, 216 Cal.App.4th at p. 1106.) Given these principles, the question of equitable estoppel is generally inappropriate at the demurrer stage. (*Ard v. County of Contra Costa* (2001) 93 Cal.App.4th 339, 346-347.)

---

[7] "The paradigmatic equitable estoppel arises where a prospective defendant induces a prospective plaintiff not to protect his rights, and when the plaintiff attempts to assert them, raises a defense that exploits the plaintiff's lapse. The classic example is the assertion of a procedural bar, such as a statute of limitations, after the defendant has induced plaintiff not to file suit within the allotted time. If the court is satisfied that the facts and the equities justify application of the doctrine, it will hold the defendant estopped to assert the defense, and the matter will proceed as if the claim had been seasonably asserted." (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 487.) The doctrine is codified in Evidence Code section 623, which states: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (*Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1105-1106.)

Our task is to determine if plaintiffs pleaded the elements of equitable estoppel such that Lorenz would be barred as a matter of law to assert the section 366.2 statute of limitations. But plaintiffs do not demonstrate they did so by reference to their pleadings. Rather, they argue Lorenz's actual or constructive fraud, and her failure to notify the trust's creditors or establish a probate, compels application of the doctrine. We infer the trial court rejected application of the doctrine, and indulging all intendments and presumptions in support of the trial court's ruling (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564), we uphold it. We perceive nothing in plaintiffs' arguments demonstrating that Lorenz should be precluded from asserting section 366.2 as a defense because she engaged in some conduct inducing them to forebear filing suit within the applicable limitations period. (Contra, *Battuello v. Battuello*, *supra*, 64 Cal.App.4th at p. 848; *Embree v. Embree* (2004) 125 Cal.App.4th 487, 497 [finding no evidence of misconduct by the beneficiaries, "or promises on their part that induced [the plaintiff's] forbearance to file suit" so as to preclude assertion of the statute of limitations on equitable estoppel grounds].)

B. *Delayed Discovery*

Plaintiffs contend the trial court erred by failing to rule that the statute of limitations did not begin to run until their discovery of the fraud and negligence on April 1, 2010. As to the claims against Lorenz, which are subject to the section 366.2 statute of limitations, the contention is without merit.

As we have pointed out above, the Legislature has expressly provided that the one-year limitations period of section 366.2 applies to causes of action "whether

20

accrued or not accrued" (§ 366.2, subd. (a)) and "shall not be tolled or extended for *any reason . . . .*" except in circumstances not applicable here.  (§ 366.2, subd. (b), italics added; see *Bradley v. Breen*, *supra*, 73 Cal.App.4th at p. 804.)  "We . . . presume that the Legislature was well aware of the usual rules on accrual of actions . . . when it amended section 366.2" and thus it applies to bar plaintiffs' causes of action against Lorenz regardless of whether they have accrued under ordinary rules applicable to such claims.  (*Bradley*, at pp. 804-805; see *Battuello v. Battuello*, *supra*, 64 Cal.App.4th at p. 847, fn. 1.)  This includes when a cause of action does not accrue until the plaintiff discovers, or should discover, its existence.  (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807; *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 554.)  Thus, where a defendant perpetrates a fraud of which a plaintiff is unaware, the decedent's death triggers the limitations period prescribed by section 366.2, regardless of any accrual rule otherwise governing the claim.  (*Ferraro*, at p. 554.)  "The result is to require would-be claimants to seek out and assert any claims they might have against the decedent within a year of his death, or suffer the loss of those claims."  (*Ibid*.)  Because the Legislature has decided that the delayed discovery rule will not operate to avoid the section 366.2 limitations period, plaintiffs may not apply it to their claims against Lorenz.

C.  *Constitutionality of Section 366.2*

In somewhat disjointed arguments, plaintiffs challenge the constitutionality of section 366.2.  Pointing out it does not include a written notice requirement to creditors of an estate, they contend the statute violates due process by "unfairly eliminat[ing] legitimate and valuable property rights without giving the Creditor the right and

21

opportunity to be heard."  They also argue application of section 366.2 against creditors so as to eliminate a creditors' claim "constitutes a 'taking' of property in the constitutional sense, since the Creditor loses his otherwise enforceable right without any prior notice."  Plaintiffs assert that the controlling authority is the United State Supreme Court's opinion in *North Georgia Finishing, Inc. v. DiChem, Inc.* (1975) 419 U.S. 601.

We reject the contentions.  As for plaintiffs' "takings" argument, they did not raise it below and therefore did not preserve it for appeal.  (*Kuperman v. San Diego County Assessment Appeal Bd. No. 1* (2006) 137 Cal.App.4th 918, 930 [constitutional due process challenge to limitations period was not preserved for appeal].)

Plaintiffs otherwise do not state a due process violation.  "Long-established law recognizes that statutes of limitations are within the jurisdictional authority of the state Legislature."  (*Bettencourt v. City and County of San Francisco* (2007) 146 Cal.App.4th 1090, 1102.)  "It is settled that the Legislature may enact a statute of limitations 'applicable to existing causes of action or shorten a former limitation period if the time allowed to commence the action is reasonable.'  [Citations.]  [¶]  Statutes of limitation are 'within the constitutional power of the legislature of a state' [citation]; they are 'vital to the welfare of society and are favored by the law . . . to be viewed as statutes of repose, and as such constitute meritorious defenses.' "  (*Scheas v. Robertson* (1951) 38 Cal.2d 119, 125-126.)  This court has observed that " ' "[a] constitutional right is always subject to reasonable statutory limitations as to the time within which to enforce it, if the constitution itself does not provide otherwise.  The power of the legislature to provide reasonable periods of limitation, therefore, is unquestioned, and the fixing of time limits

22

within which particular rights must be asserted is a matter of legislative policy the nullification of which is not a judicial prerogative." ' [Citations.] Statutes of limitations further a public policy of 'promot[ing] repose by giving security and stability to human affairs.' " (*Kuperman v. San Diego County Assessment Appeal Bd. No. 1*, *supra*, 137 Cal.App.4th at pp. 931-932.) And in enacting section 366.2 in particular, the Legislature intended to protect decedents' estates from creditors' stale claims; the drafters believed the one-year limitation period " 'serves "the strong public policies of expeditious estate administration and security of title for distributees, and is consistent with the concept that a creditor has some obligation to keep informed of the status of the debtor." ' " (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 308; see also *Wagner v. Wagner*, *supra*, 162 Cal.App.4th at p. 255; *Levine v. Levine* (2002) 102 Cal.App.4th 1256, 1263-1264.)

These important state interests defeat plaintiffs' constitutional due process arguments. There is no question that "[t]he right to procedural due process guaranteed by the United States and California Constitutions requires that an individual be afforded notice and an opportunity for hearing before he is deprived of a significant property interest." (*Trihedron Internat. Assurance, Ltd. v. Superior Court* (1990) 218 Cal.App.3d 934, 946, citing *Randone v. Appellate Department* (1971) 5 Cal.3d 536, 541.) But plaintiffs provide no authority for the proposition that an unadjudicated claim in litigation is a significant property interest to which the right of procedural due process guaranteed by the United States and California Constitutions applies. *North Georgia Finishing, Inc. v. District-Chem, Inc.*, *supra*, 419 U.S. 601 does not stand for any such proposition.

23

*North Georgia* is distinguishable because it involved the prejudgment garnishment of a bank account. In the context of traditional prejudgment creditors' remedies, the state has no substantial interest to protect in providing plaintiffs with a prejudgment financial advantage over defendants. (*Trihedron Internat. Assurance, Ltd. v. Superior Court*, at p. 947 [distinguishing *North Georgia* and other cases implicating due process].)

Here, as stated, the state has an interest in promoting repose and stability to human affairs, as well as expeditious estate administration. (*Kuperman v. San Diego County Assessment Appeal Bd. No. 1*, *supra*, 137 Cal.App.4th at pp. 931-932; *Collection Bureau of San Jose v. Rumsey*, *supra*, 24 Cal.4th at p. 308.) On the foregoing grounds, we reject plaintiffs' constitutional due process challenge to section 366.2.

D. *Failure to Institute Probate Proceedings/Application of Probate Code Section 19008*

Plaintiffs contend the Boehmler trust's failure to file a probate proceeding or give timely notice of Boehmler's death to creditors "gives rise to an inference that the Trust intended to mislead" them with respect to the time limitations for filing an action. They continue, citing *Valentine v. Read* (1996) 50 Cal.App.4th 787: "*If no probate estate is opened* and neither the trustee of a revocable inter vivos trust nor any beneficiary thereof causes trust creditors' claim proceedings to be instituted under [Probate] Code [sections] 19000 et seq., then the trust assets can be held liable to a creditor of the decedent under otherwise applicable principles of law." (Some capitalization omitted.) In a somewhat related but unclear argument, plaintiffs seem to argue they are entitled to a resulting trust by operation of law under Probate Code sections 19001 and 19008. Plaintiffs conclude that given these arguments, section 366.2 does not apply to this case.

24

Probate Code section 19000 et seq., governs claims procedures for *revocable* trusts of deceased settlors. (*Levine v. Levine*, *supra*, 102 Cal.App.4th at p. 1260.) Plaintiffs have neither alleged nor attached documents reflecting the type or nature of the Boehmler trust, whether it is revocable or irrevocable. But plaintiffs' arguments are meritless in any event, as they misread Probate Code section 19008.[8]

As the appellate court explained in *Wagner v. Wagner*, *supra*, 162 Cal.App.4th 249, the practical effect of the provisions of Probate Code section 19000 et seq. " 'is generally to shorten the time frame within which a claimant can assert a claim against a decedent's estate or trust. If the trustee files the proposed notice to creditors with the court under section 19003 of the Probate Code right after the settlor's death, and then proceeds to immediately give the notices required in Probate Code sections 19040 and 19050, a creditor could have just over 30 days to submit a claim . . . .' " (*Wagner*, at p. 255, quoting *Levine v. Levine*, *supra*, 102 Cal.App.4th at p. 1261.) The *Wagner* court then cited Probate Code section 19008 and summarized its impact: " 'If no probate or trust claims procedure has been initiated, . . . the short limitations periods applicable to claims filed in probate or trust claims proceedings do not apply; and the availability of trust property to any creditor of the deceased settlor "shall be as otherwise provided by law." ' [Citation.] *Thus, absent a trustee's election to file a formal notice to claimants,*

---

8    Probate Code section 19008 provides: "If there is no proceeding to administer the estate of the deceased settlor, and if the trustee does not file a proposed notice to creditors pursuant to [Probate Code s]ection 19003 and does not publish notice to creditors pursuant to Chapter 3 (commencing with [Probate Code s]ection 19040), then the liability of the trust to any creditor of the deceased settlor shall be as otherwise provided by law."

*the time to assert a claim against a decedent's revocable trust is governed by the more general statute of limitations for all claims against a decedent embodied in Code of Civil Procedure section 366.2.*"  (*Wagner*, at p. 255, in part citing *Embree v. Embree*, *supra*, 125 Cal.App.4th at p. 494 & Prob. Code, § 19008, italics added.)  Contrary to plaintiffs' arguments, Probate Code section 19008 *compels* application of the one-year limitations period of Code of Civil Procedure section 366.2 in this case.

## V.  *Void Transaction*

Plaintiffs contend the assignment of the deed of trust without an assignment of the promissory note renders the entire transaction void, and there is no time limit to attack a void transfer.  They maintain the trial court erred by failing to invalidate the transaction under its "inherent equitable powers," including such powers under Probate Code sections 850 and 856.  Plaintiffs' argument and their allegation that the Boehmler trust did not assign the note, however, is contradicted by the assignment of the deed of trust, which expressly states that the Boehmler trust assigned its interest in the deed of trust "together with the Promissory Note secured by said Deed of Trust . . . ."  We are entitled to take judicial notice of the assignment and rely on it in disregarding the contrary allegations in the first amended complaint.  (Accord, *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 271 & fn. 10.)

Furthermore, plaintiffs do not explain in any meaningful way how these arguments relate to their asserted causes of action, particularly their cause of action for rescission, which would extinguish the contract (Civ. Code, § 1588), or how their first amended complaint states facts constituting some other cause of action.  Such arguments,

26

untethered to any facts alleged in plaintiffs' complaint, do not demonstrate that the complaint is sufficient to state a viable cause of action, and we do not consider them. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 ["We are not required to search the record to ascertain whether it contains support for [the plaintiffs'] contentions. [Citation.] . . . This court is not inclined to act as counsel for . . . appellant . . . .' [Citation.] [¶] Because it is not this court's function to serve as [plaintiff's] backup appellate counsel . . . the . . . contentions are waived"].) Nor have plaintiffs shown on appeal that a potentially effective amendment is apparent. (*Herrera v. Federal Nat. Mort. Assn.* (2012) 205 Cal.App.4th 1495, 1501; *Camsi IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1542.)

## VI. *Plaintiffs' Claims Against First Security*

As for plaintiffs' causes of action for fraud, negligent misrepresentation, breach of oral contract and negligence against First Security, we conclude each is barred by their respective statutes of limitation (§§ 338, subd. (d) [three-year limitations period for fraud]; 339, subd. (1) [two-year limitations period for breach of oral contract]; 335.1 [two-year limitations period for general negligence]) and that the discovery rule, which postpones accrual of a cause of action until the plaintiff "discovers, or has reason to discover, the cause of action" (*Fox v. Ethicon Endo–Surgery, Inc.*, *supra*, 35 Cal.4th at pp. 806-807) does not apply.

"Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." (*Fox v. Ethicon Endo–Surgery, Inc.*, *supra*, 35 Cal.4th at

27

p. 807.)  The statute of limitations begins to run when the plaintiff has notice or information that would put a reasonable person on inquiry.  (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111.)  "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery.  Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.  So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Id.* at p. 1111.)  "[T]he delayed discovery rule has most often been described as an equitable doctrine designed to achieve substantial justice in situations where one party has an unfair advantage and it would be inequitable to deprive ' "an 'otherwise diligent' plaintiff in discovering his cause of action."  [Citations.]'  [Citations.]  It is normally applied in situations where there is a 'fiduciary, confidential or privileged relationship'— basically, where individuals hold 'themselves out as having a special skill, or are required by statute to possess a certain level of skill' and it is manifestly unfair to deprive the plaintiffs of their cause of action before they are aware that they have been injured." (*Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1261-1262.)

This court explained in *Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1374, that " ' "[u]nder this rule constructive and presumed notice or knowledge are equivalent to knowledge.  So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources

open to [her] investigation (such as public records or corporation books), the statute commences to run." ' "

We reject application of the delayed discovery doctrine because at the time plaintiffs received the assignment in May 2007, the condominium plan for the property, which was recorded in August 1973 and specifically referenced in the assignment, showed no designated carports for the property. Thus, under these circumstances plaintiffs cannot plead facts showing they lacked the means of obtaining knowledge in the exercise of reasonable diligence concerning the existence or absence of designated carports for the property.

As for plaintiffs' breach of contract cause of action against First Security, we conclude it fails to state facts sufficient to constitute a cause of action. Plaintiffs allege defendants breached the assignment by failing to deliver a "separate proper assignment" of the promissory note. But First Security was not a party to the written assignment, which is attached to the complaint. And we have already concluded that the written assignment states the note was assigned with the deed of trust, and on that basis we disregard plaintiffs' contrary allegations. (*Fontenot v. Wells Fargo Bank, N.A.*, *supra*, 198 Cal.App.4th at p. 271 & fn. 10.) Because this was the only theory alleged in support of their breach of contract action, we conclude the trial court properly sustained First Security's demurrer to it.

Plaintiffs otherwise make only few, cursory arguments that apply directly to the causes of action against First Security. In particular, they contend the trial court reversibly erred by failing to find their complaint sufficient or construe its allegations

29

liberally; the trial court erred by failing to find First Security breached its duty to disclose facts; the assignment, which was not given to plaintiffs until after the close of escrow, is vague and ambiguous as to the existence of carports; and First Security breached the assignment by failing to prepare a "proper" assignment.

Even on a demurrer, we apply the settled appellate principles that the trial court's judgment is presumed correct, and that plaintiffs must affirmatively show error. (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564; see *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799.) Where plaintiffs do not support issues with pertinent or cognizable legal argument we may deem them abandoned without discussion. (*Dietz,* at p. 799; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700.) " 'It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " (*Dietz,* at p. 799.) Further, it is plaintiffs' obligation to tailor their appellate arguments to the appropriate standard of review. (*People v. Foss* (2007) 155 Cal.App.4th 113, 126 ["When an appellant fails to apply the appropriate standard of review, the argument lacks legal force"].)

The above-referenced principles lead us to conclude plaintiffs have not presented sufficient arguments or legal authority to justify reversal. Disregarding the applicable legal principles for appellate review of an order sustaining a demurrer, plaintiffs advance mostly substantive arguments, and otherwise state only general principles. For example, citing the general principle that a party to a business transaction has a duty to exercise

30

reasonable care to disclose true facts relating to the transaction, plaintiffs contend First Security had a duty to clearly disclose there was no designated parking, and they had the right to rely upon the appraisal report. They contend the assignment "was never shown to [them] until after the close of escrow" and it is "vague and ambiguous as to whether parking spaces were included," which ambiguity "must be construed against First Security." They argue "First Security assumed the duty of preparing the Assignment" and "[b]y that conduct, it formed an implied, if not actual, contract that First Security prepare a proper Assignment" but did not, constituting a breach of contract subject to the four-year statute of limitations. Plaintiffs argue, "The [trial court's] analysis in its rulings . . . do not adhere to applicable legal criteria in allowing multiple amendments and was totally arbitrary resulting in a gross miscarriage of justice."

These arguments on appeal do not focus on the elements of each of their causes of action or the first amended complaint's allegations and their sufficiency. Even where our review is de novo, appellants must present pertinent arguments on their behalf, or face forfeiting the issues. Without pertinent argument as to how the allegations of the first amended complaint are sufficient to state a cause of action, we have no basis to conclude that pleading is sufficient to survive First Security's demurrer. On that ground alone, we may affirm the judgment as to First Security.

## VII. *Leave to Amend*

Plaintiffs argue strenuously that the trial court erred by failing to permit them leave to amend, pointing out they had only one opportunity to amend as to Lorenz and none as to First Security. However, they have not demonstrated how they can cure the

31

deficiencies in their complaint.  We conclude the trial court did not abuse its discretion in sustaining respondents' demurrers without leave to amend.

DISPOSITION

The judgments are affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.